**COMMONWEALTH of Pennsylvania
ex rel. Stanley REBERT,
Appellee**

**v.**

**Stephen D. RAMBLER, Appellant.**

Superior Court of Pennsylvania.

Argued June 10, 2009.

Filed March 17, 2010.

Randall L. Wenger, Camp Hill, for appellant.

Jennifer L. Russell, Assistant District Attorney, for Commonwealth, appellee.

BEFORE: ALLEN, FREEDBERG and CLELAND, JJ.

OPINION BY CLELAND, J.:

¶ 1 Appellant Stephen D. Rambler, the elected mayor of Wrightsville, Pennsylvania, appeals the trial court order granting the motion for judgment on the pleadings by the District Attorney of York County, on behalf of the Commonwealth of Pennsylvania, in a *quo warranto* proceeding. Believing appellate jurisdiction may instead lie with the Supreme Court under 42 Pa.C.S.A. § 722(2), Rambler has also filed an Application for Transfer of his appeal to the Supreme Court. For reasons that follow, we conclude jurisdiction lies with the Superior Court, we vacate the trial court's order and we remand for entry of judgment in favor of Rambler.

¶ 2 On January 2, 2006, Rambler assumed the office of mayor after his November 8, 2005 election. On March 28, 2006, the District Attorney filed a complaint in *quo warranto* seeking the ouster of Rambler from his mayoral office pursuant to Article II, § 7 (Ineligibility by criminal convictions) of the Pennsylvania Constitution which provides: "No person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth." Ten years earlier, in February 1996, Rambler pled guilty to a federal felony charge of Mailing Threatening Communications, 18 U.S.C. § 876(d), a crime carrying a maximum two year sentence. Complaint at ¶ 8. Rambler served a two year probationary sentence. The charges were based on Rambler's sending each of approximately 30 letters threatening to release sexually explicit photographs to the public unless he received $50. Complaint at ¶ 7, Exhibit 1.

¶ 3 On May 21, 2008, following several amended pleadings and pre-trial motions, the trial court granted the District Attorney's motion for judgment on the pleadings. On May 30, Rambler filed a Notice of Appeal. On April 28, 2009, Rambler filed his Application for Transfer of his appeal to the Supreme Court on the ground it has exclusive jurisdiction over *quo warranto* proceedings.

¶ 4 Rambler presents three questions for review: [1]

A. Whether the trial court erred in concluding that Mr. Rambler's conviction under 18 U.S.C. § 876 was an "infamous crime" for purposes of Article II, § 7 of the Pennsylvania Constitution when § 876 only has a maximum sentence of two years?

B. Whether the trial court erred in failing to find that Article II, § 7 of the Pennsylvania Constitution violates the due process clause of the

---

1. Appellant's Brief at 4. For readability, we have converted text to lower case.

U.S. Constitution by vesting unfettered discretion in the hands of the District Attorney to determine whether or not to remove an elected official from office, thereby arbitrarily undermining the will of the electorate?

C.  Whether the trial court erred in not applying the doctrine of latches [sic] due to a delay in the District Attorney's actions, which resulted in the electorate being deprived of the opportunity of electing another like-minded candidate?

¶ 5 The trial court, relying on *Commonwealth ex rel. Pennsylvania Attorney General Corbett v. Griffin*, 596 Pa. 549, 946 A.2d 668 (2008), rejected the *laches* defense, holding the District Attorney's three-month delay in instituting the *quo warranto* proceeding was not a "gross and unreasonable delay" such that "allowing an action to proceed under Article II, Section 7 would be injurious to the public welfare or would manifestly subvert the interests of justice." Rule 1925 Opinion, 5/21/08, at 6–8 (quoting from *Griffin*, 596 Pa. at 564, 946 A.2d at 677).

¶ 6 Relying on *Griffin*, the trial court, because Rambler's offense was a felony, found it, by definition, an "infamous crime" within the meaning of Article II, § 7. Rule 1925 Opinion, 5/21/08, at 8–9.

¶ 7 The trial court rejected Rambler's due process challenge as undeveloped. Rule 1925 Opinion, 5/21/08, at 9–10. The trial court added that *Griffin* also rejected more developed constitutional challenges.

■ ¶ 8 We have explained our standard of review:

Our scope and standard of review in an appeal of an order granting a motion for judgment on the pleadings is well settled: this Court applies the same standard as the trial court and confines its consideration to the pleadings and documents properly attached thereto. *Lewis v. Erie Ins. Exch.*, 753 A.2d 839, 842 (Pa.Super.2000), aff'd, 568 Pa. 105, 793 A.2d 143 (2002). We must determine whether "the trial court's action respecting the motion for judgment on the pleadings 'was based on a clear error of law or whether there were facts disclosed by the pleadings which should properly go to the jury.'" *Id.* We will affirm the grant of judgment on the pleadings only if "the moving party's right to succeed is certain and the case is so free from doubt that trial would clearly be a fruitless exercise." *Id.* (internal quotation marks omitted).

*DeSantis v. Prothero*, 916 A.2d 671, 673 (Pa.Super.2007).

¶ 9 Because this case implicates an interpretation of the Pennsylvania Constitution and, with respect to the Application for Transfer, an interpretation of 42 Pa. C.S.A. § 722(2), these are questions of law for which our standard of review is *de novo* and our scope of review plenary. *Commonwealth ex rel. Judicial Conduct Bd. v. Griffin*, 591 Pa. 351, 355, 918 A.2d 87, 90 (2007).

■ ¶ 10 Before we address the substantive issues in this case, we must first determine whether the Supreme Court has exclusive subject matter jurisdiction under § 722(2) which provides: "The Supreme Court shall have exclusive jurisdiction of appeals from final orders of the courts of common pleas in the following classes of cases: ... (2) The right to public office." In a 1970 seminal case involving the removal of a school superintendent by a school board, the Supreme Court defined " 'Public office' ... to mean an elective or appointive position in which the incumbent is exercising a governmental function which involves a measure of policy making and which is of general public importance."

*Appeal of Bowers*, 440 Pa. 310, 318, 269 A.2d 712, 716–717 (1970). The Court then proceeded to define "the right to public office:"

> The "right" to office undoubtedly includes questions of qualification, eligibility, regularity of the electoral or appointive process and other preconditions to the holding of a particular public office. We think "right" should not normally include an appraisal of the sufficiency of or ruling upon evidence or other allegedly irregular aspects of the proceedings before a hearing tribunal resulting in an officeholder's discharge from his position.

*Appeal of Bowers*, 440 Pa. 310, 317, 269 A.2d 712, 716 (1970) (holding a *removal proceeding*, therefore, did not involve "the right to public office" within the meaning of § 722(2)). More recently, in *Commonwealth v. Spano*, 549 Pa. 501, 701 A.2d 566 (1997), the Supreme Court explained the rationale underlying its decision in *Appeal of Bowers:*

> There are sound public policy reasons for the distinction which was drawn in *Appeal of Bowers* between *prequalification actions* and *removal actions*. When the results of an election are challenged, the occupancy of a key public office is left uncertain until the legal contest is decided by the courts. For as long as the contest goes on, there is uncertainty over who is the rightful occupant of that office and no policy can be made. Similarly, when a challenge is mounted to the candidacy of an individual for public office, the election would be tainted by uncertainty if the challenge were not definitively resolved before the election took place. The cases relied on

by the Superior Court, *Egan v. Mele*, 535 Pa. 201, 634 A.2d 1074 (1993) and *Commonwealth ex rel. Waltman v. Graczyk*, 501 Pa. 244, 460 A.2d 1098 (1983), both involved such prequalification challenges. In such cases, the public interest in having a functioning representative government demands that the contest be terminated as expeditiously as possible. Therefore appeals come directly to this court, not because we have more expertise, but because the answer will be final.

> The public interest is not impacted to the same degree when an officeholder is removed. The situation then is comparable to when an officeholder dies or is incapacitated in office. The public is not faced with the same uncertainty resulting from competing claims to public office. Instead, someone else will fill the position as provided for in the applicable statute or ordinance. If the removal was wrongful, the officeholder can eventually be reinstated in place of the deputy *pro tem*, again with no interruption to the operation of the government.

*Id.* at 503–504, 701 A.2d at 567 (emphasis added except for pro tem).[2]

¶ 11 *Spano* focuses on whether the defendant is seeking office or already is in office. If the former, government becomes paralyzed—"no policy can be made" until the entitlement to assume office is resolved. The public interest requires an immediate resolution of the issue so that government can return to normal function. A direct appeal to the Supreme Court ensures a speedy and final resolution. In contrast, where the defendant is already in

---

**2.** *Bowers*, 440 Pa. at 317, 269 A.2d at 716, and *Spano*, 549 Pa. at 504, 701 A.2d at 568, acknowledged the Supreme Court may, one day, recognize an exception to the *Bowers–Spano* rule. *Spano*, 549 Pa. at 504, 701 A.2d at 568, emphasized that such a possible exception will be necessary to "protect the interests of the public," and that the loss of services of a particular office-holder will not itself suffice.

office, *Spano* finds the need for an expedited resolution less urgent. "The public interest is not impacted to the same degree when an officeholder is removed. The situation then is comparable to when an officeholder dies or is incapacitated in office." Typically, legislation already contemplates the prospect of an incumbent's departure from office by providing for a successor to assume the duties of the departing incumbent.

¶ 12 Based on *Spano's* distinction between "prequalification actions" and "removal actions," we hold the Supreme Court does not have exclusive jurisdiction under § 722(2).

¶ 13 We turn now to the substantive issues in this appeal.

▪ ¶ 14 Rambler's principal argument is that the federal felony to which he pled guilty is not an "infamous crime" within the meaning of Article II, § 7 of the Pennsylvania Constitution. The Supreme Court has defined the term: "[W]e reaffirm that a crime is infamous for purposes of Article II, Section 7, if its underlying facts establish a felony, a *crimen falsi* offense, or a like offense involving the charge of falsehood that affects the public administration of justice." *Commonwealth ex rel. Baldwin v. Richard,* 561 Pa. 489, 499, 751 A.2d 647, 653 (2000). In *Commonwealth ex rel. Pennsylvania Attorney General Corbett v. Griffin,* 596 Pa. 549, 946 A.2d 668 (2008), the Supreme Court re-affirmed *Richard's* point that a felony alone constitutes an "infamous crime" even if unrelated to "the public administration of justice." *Id.* at 557–560, 946 A.2d at 673–674. "[T]his Court has

consistently adhered to an interpretation in which felonies and *crimen falsi* offenses are distinct (albeit overlapping) categories, both of which contribute to the definition of infamous crimes." *Id.* at 558, 946 A.2d at 674.

¶ 15 There remains, however, the more difficult question, and one of first impression,[3] whether conduct resulting in a felony conviction under federal law, but which would be classified as a misdemeanor under our Crimes Code, constitutes an "infamous crime" under the Pennsylvania Constitution.

¶ 16 Section 3923(a)(3) of the Crimes Code defines an offense very similar to the federal felony. 18 Pa.C.S.A. § 3923 (Theft by extortion). Section 3923(a)(3) reads: "**(a) Offense Defined.**—A person is guilty of theft if he intentionally obtains or withholds property of another by threatening to: ... (3) expose any secret tending to subject any person to hatred, contempt or ridicule[.]" The elements of the federal crime are substantially similar:

(d) Whoever, with intent to extort from any person any money or other thing of value, knowingly so deposits or causes to be delivered, as aforesaid, any communication, with or without a name or designating mark subscribed thereto, addressed to any other person and containing any threat to injure the property or reputation of the addressee or of another, or the reputation of a deceased person, or any threat to accuse the addressee or any other person of a crime, shall be fined under this title or imprisoned not more than two years, or both.

---

**3.** We do, however, note *In re Petition of Hughes,* 516 Pa. 90, 532 A.2d 298 (1987) where the Supreme Court held a city council candidate's conduct constituting the federal felony of conspiracy to obstruct interstate commerce also constituted the Pennsylvania crime of bribery, 18 Pa.C.S.A. § 4701(a). "Thus, although [the candidate] was not convicted of bribery, he was convicted of a crime the essence of which was bribery, and bribery is encompassed in the phrase 'other infamous crime.'" *Id.* at 96, 532 A.2d at 301.

18 U.S.C. § 876(d). Each crime involves intent to extort property from a victim by a communication threatening to injure the victim's reputation (the federal crime) or subject the victim to hatred, contempt or ridicule (the Pennsylvania equivalent).

¶ 17 Pennsylvania, however, classifies § 3923(a)(3) as a misdemeanor, not a felony. Section 3903 grades theft offenses into two degrees of felonies and three degrees of misdemeanors. 18 Pa.C.S.A. § 3903 (Grading of theft offenses). The felony grades, for example, involve theft of a firearm, automobile, or motorcycle, or constitute receiving a firearm as stolen property, or involve a dollar amount exceeding $2,000.[4] § 3903(a) and (a.1). If the theft is not within (a) or (a.1), the theft is graded as a misdemeanor of the first, second or third degrees:

> (b) Other grades.—Theft not within subsection (a) or (a.1) of this section, constitutes a misdemeanor of the first degree, except that if the property was not taken from the person or by threat, or in breach of fiduciary obligation, and:
>
> (1) the amount involved was $50 or more but less than $200 the offense constitutes a misdemeanor of the second degree; or
>
> (2) the amount involved was less than $50 the offense constitutes a misdemeanor of the third degree.

§ 3903(b).

¶ 18 In addition, the Crimes Code's system of classifying crimes into three murder, three felony, three misdemeanor and summary offense categories further supports the conclusion Rambler's crime was a misdemeanor under Pennsylvania law.

18 Pa.C.S.A. § 106 (Classes of offenses).[5] Section 106(b) provides in pertinent part:

> **(b) Classification of crimes.—**
>
> * * *
>
> (7) A crime is a misdemeanor of the second degree if it is so designated in this title or if a person convicted thereof may be sentenced to a term of imprisonment, the maximum of which is not more than two years.
>
> (d) Other crimes.—Any offense declared by law to constitute a crime, without specification of the class thereof, is a misdemeanor of the second degree, if the maximum sentence does not make it a felony under this section.

The Official Comment—1972 to § 106 distinguishes felonies from misdemeanors: "(1) where the maximum sentence that may be imposed is five years or more, the crime is a felony, and (2) where the maximum sentence is five years or less, the crime is a misdemeanor." The maximum sentence imposed by § 876(d) is only two years.

¶ 19 Comparing the elements composing each offense and the penalties imposed for each offense, we conclude the Pennsylvania equivalent to the federal felony is the misdemeanor described in § 3923(a)(3). We further hold the definition of "felony" in Article II, § 7 of the Pennsylvania Constitution should reflect those crimes the Pennsylvania Legislature, not the legislature of a foreign state or of the Congress, chooses to classify as "felonies."

¶ 20 In conclusion, we hold the Supreme Court does not have exclusive jurisdiction of this appeal, and we further hold the trial court erred in granting the District Attorney's motion for judgment on the plead-

---

4. Rambler pled to an offense involving only 30 letters demanding $50 each. Complaint at ¶ 7, Exhibit 1.

5. We note § 106(e) provides "[a]n offense hereafter defined by any statute other than this title shall be classified as provided in this section."

ings. Accordingly, we deny Rambler's Application for Transfer, and we vacate the trial court order of judgment on the pleadings for the District Attorney and remand for entry of judgment in favor of Rambler.[6] Jurisdiction relinquished.

---

**6.** *See Bensalem Tp. School Dist. v. Commonwealth*, 518 Pa. 581, 586–587, 544 A.2d 1318, 1320–321 (1988) (court may enter judgment on the pleadings in favor of the non-moving party).