32 A.3d 658

**COMMONWEALTH of Pennsylvania ex rel. Thomas KEARNEY III, Appellant**

v.

**Stephen D. RAMBLER, Appellee.**

Supreme Court of Pennsylvania.

Argued May 10, 2011.

Decided Nov. 23, 2011.

34

Thomas L. Kearney III, Jennifer Lee Russell, James Edward Zamkotowicz, York County District Attorney's Office, for Commonwealth of Pennsylvania ex rel. Appellant.

Joshua M. Autry, Dennis E. Boyle, Philadelphia, Randall Luke Wenger, Camp Hill, Boyle Neblett & Wenger, for Stephen D. Rambler.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice SAYLOR.

The primary question presented is whether a federal felony offense constitutes an "infamous crime" that disqualifies an individual from holding public office under Article II, Section 7 of the Pennsylvania Constitution, notwithstanding that a similar offense defined under the Pennsylvania Crimes Code is graded as a misdemeanor.

In the 1990s, Appellee Stephen D. Rambler mailed letters in an attempt to extort money from approximately thirty individuals by threatening to reveal certain sexually explicit correspondence if they did not render payment as demanded. Based on this conduct, the United States Attorney for the Middle District of Pennsylvania charged Appellee with violating Section 876 of Title 18 of the United States Code, entitled, "Mailing threatening communications." That provision states, in relevant part:

> Whoever, with intent to extort from any person any money or other thing of value, knowingly [deposits in any post office] or causes to be delivered . . . any communication . . . addressed to any other person and containing any threat to injure the . . . reputation of the addressee . . . , shall be fined under this title or imprisoned not more than two years, or both . . . .

18 U.S.C. § 876(d). Pursuant to an agreement with the government, Appellee pleaded guilty in March 1996 to a single felony violation of the above statute. He was sentenced to serve a two-year term of probation and pay a $550 fine.

■ Nearly ten years later, in November 2005, Appellee was elected mayor of Wrightsville, York County. He assumed office in January 2006. Two months later, the Commonwealth, acting through then-York County District Attorney H. Stanley Rebert, filed a complaint in *quo warranto* seeking to remove Appellee from office pursuant to Article II, Section 7 of the Pennsylvania Constitution, which provides:

> No person hereafter convicted of embezzlement of public moneys, bribery, perjury or other infamous crime, shall be

eligible to the General Assembly, or capable of holding any office of trust or profit in this Commonwealth.

PA. CONST. art. II, § 7.[1]

In its complaint, the Commonwealth stressed that Appellee had pleaded guilty to a federal felony charge of mailing threatening communications. Accordingly, the Commonwealth alleged that the federal offense constitutes an "infamous crime" in Pennsylvania, and requested an order declaring Appellee unqualified for his mayoral office and excluding him from that office. The common pleas court ultimately issued an opinion and order, granting judgment on the pleadings in favor of the Commonwealth, removing Appellee from office, and disqualifying him from holding any office of trust or profit in Pennsylvania. In its opinion, the court relied heavily on *Commonwealth ex rel. Corbett v. Griffin*, 596 Pa. 549, 946 A.2d 668 (2008), in which this Court granted *quo warranto* relief under Article II, Section 7, and removed from office a municipal court judge who had pleaded guilty to federal felony offenses prior to running for office.

Appellee appealed, claiming that his federal extortion conviction did not qualify as an infamous crime under Article II, Section 7, because his conviction only carried a maximum sentence of two years, *see* 18 U.S.C. § 876(d), which is comparable to a misdemeanor sentence in state court. *See* 18 Pa.C.S. § 106(b)(7) (classifying as second-degree misdemeanors crimes that are designated as such in the Crimes Code or are punishable by a maximum of two years' imprisonment). Further, he argued that his federal due process rights were violated because Article II, Section 7 allows the district attorney to exercise unfettered discretion to determine whether to remove an elected official from office, thereby arbitrarily interfering with Appellee's right to hold office and the voters' interest in electing a candidate of their choice. Finally, Appellee maintained that the trial court erred in not applying the

---

1. *Quo warranto* is the proper means by which to test title or right to public office. *See In re Bd. of Sch. Dirs. of Carroll Township*, 407 Pa. 156, 157–58, 180 A.2d 16, 17 (1962).

doctrine of laches because the District Attorney failed to commence its *quo warranto* action prior to the election.

The Superior Court reversed in a published decision. *See Commonwealth ex rel. Rebert v. Rambler*, 991 A.2d 909 (Pa.Super.2010). The court recognized that, in *Griffin*, this Court indicated that any felony conviction represents a constitutionally infamous crime. *See Griffin*, 596 Pa. at 558, 946 A.2d at 674 ("[T]his Court has consistently adhered to an interpretation in which felonies and *crimen falsi* offenses are distinct (albeit overlapping) categories, both of which contribute to the definition of infamous crimes."); *see also Commonwealth ex rel. Baldwin v. Richard*, 561 Pa. 489, 499, 751 A.2d 647, 653 (2000) ("[W]e reaffirm that a crime is infamous for purposes of Article II, Section 7, if its underlying facts establish a felony, a *crimen falsi* offense, or a like offense involving the charge of falsehood that affects the public administration of justice."). The court nonetheless considered the present circumstances to raise an issue of first impression, namely, "whether conduct resulting in a felony conviction under federal law, but which would be classified as a misdemeanor under our Crimes Code, constitutes an 'infamous crime' under the Pennsylvania Constitution." *Rambler*, 991 A.2d at 913. In this regard, the court suggested that the question of whether a federal offense constitutes a felony for Article II, Section 7 purposes, depends upon the grading attached to similar crimes by the Pennsylvania Legislature rather than the grading established by Congress for the actual crime involved. Because the Crimes Code defines an offense that is similar to the one Appellee committed, *see* 18 Pa.C.S. § 3923(a)(3) (providing that a person is guilty of theft if he intentionally obtains or withholds property of another by threatening to "expose any secret tending to subject any person to hatred, contempt or ridicule"), and grades that offense as a misdemeanor, *see* 18 Pa.C.S. § 3903(b), the Superior Court concluded that Appellee's crime was not constitutionally infamous. *See Rambler*, 991 A.2d at 914.[2]

2. For reasons that remain unclear, the Superior Court did not address whether the offense was *crimen falsi*. Additionally, because of its

■ This Court allowed appeal to consider whether the intermediate court erred as a matter of law when it vacated the trial court's order on the basis that a federal conviction for felony mailing of extortionate communications did not constitute an infamous crime. *See Commonwealth ex rel. Rebert v. Rambler*, 607 Pa. 90, 3 A.3d 667 (2010) (per curiam). Because this is a pure question of law, our review is *de novo* and plenary.

The Commonwealth first contends that the state Constitution bars all felons from holding office and that, since Appellee was convicted of a felony, he is automatically disqualified. It contends alternatively that the Superior Court erred in asserting, as a premise, that the state and federal offenses at issue are equivalent. The Commonwealth notes that, unlike Pennsylvania's theft-by-extortion statute, the federal law incorporates as an additional element that the defendant used the mails to aid in the commission of the offense. Because of this element and Pennsylvania's lack of control over the postal system, the Commonwealth argues that Pennsylvania lacks an equivalent offense and, as such, the grading chosen by Congress should prevail. Thus, the Commonwealth asserts that the Superior Court, in effect, applied the grading of a lesser-included offense to the actual offense that Appellee committed. *See* Brief for Appellant at 9–10. Finally, the Commonwealth states that, under prevailing Pennsylvania law, theft by extortion is considered *crimen falsi* for evidentiary purposes and, moreover, is analogous to bribery as an infamous crime. *See id.* at 10–12.

■ Appellee initially asks this Court to dismiss the appeal as moot because his term as mayor has allegedly expired. In the event the appeal is not dismissed, Appellee argues in the alternative that the Superior Court was correct in holding that, because his conviction was the equivalent of a Pennsylvania misdemeanor, it was not infamous under Article II, Section 7. He notes, as well, that the maximum punishment for his federal offense was two years, which, under the Pennsylvania

holding, the court did not reach Appellee's due-process and laches arguments. *See Rambler*, 991 A.2d at 915.

Crimes Code, would make it a misdemeanor and not a felony. Thus, Appellee asserts that treating it as a felony would "elevate terminology over the meaning behind the terminology," as the Pennsylvania Legislature has clarified that it understands the term "felony" to mean an offense carrying a maximum sentence of at least seven years. Brief for Appellee at 9 (citing 18 Pa.C.S. § 106(b)(4)). To support his position in this regard, Appellee draws an analogy to the computation of a prior record score for sentencing purposes when a defendant has prior out-of-state convictions. He notes that, in at least one case, the Superior Court has referenced the state Sentencing Commission's expressed belief that counting all non-Pennsylvania crimes systematically for sentencing purposes is desirable for the sake of uniformity; thus, according to such reasoning, whenever possible, prior foreign convictions should be scored in the light of Pennsylvania Law—particularly if an equivalent in-state offense can be found. *See id.* at 10 (citing *Commonwealth v. Bolden*, 367 Pa.Super. 333, 337–38, 532 A.2d 1172, 1175 (1987)). Appellee concludes that, whether this Court looks to the Crimes Code's grading of the most similar state crime, or to the maximum prison sentence for a violation of Section 876(d), his federal conviction should not count as a felony. *See id.* at 11.[3]

In response to Appellee's claim that the matter is now moot, this case appears to implicate exceptions to the mootness doctrine for issues that are of great public importance or are capable of repetition while evading review. *See Pap's A.M. v. City of Erie*, 571 Pa. 375, 391, 812 A.2d 591, 600–01 (2002); *Consumers Educ. & Protective Ass'n v. Nolan*, 470 Pa. 372, 383, 368 A.2d 675, 681 (1977). As in *Rendell v. Pa. State*

---

**3.** Appellee also notes that Section 106 of the Crimes Code contains a general rule that "[a]n offense hereafter defined by any statute other than this title shall be classified as provided in this section." 18 Pa.C.S. § 106(e). He claims that this requires that the federal extortion statute be "classified as provided in this section"—that is, as a misdemeanor—because it is an offense defined by a statute other than the Crimes Code. Even assuming, *arguendo*, that the phrase, "any statute other than this title," was intended by the General Assembly to override the grading assigned to crimes committed in other jurisdictions, Appellee's argument overlooks the word, "hereafter." Since the federal statute predates the state provision, Section 106(e) is inapplicable.

*Ethics Comm'n,* 603 Pa. 292, 983 A.2d 708 (2009), moreover, we are presently considering a focused, legal issue in sharp controversy between public officials; the question has been fully developed in the intermediate appellate court, culminating in a published opinion that warrants correction; the salient legal analysis is unaffected by the extra-record circumstance alleged; and the subject involves the interpretation of an important aspect of state law that impacts upon the public trust. *See id.* at 309–10, 983 A.2d at 718–19. Under all of these circumstances, we find that it would be most appropriate to resolve the controversy.

■ On the merits, as explained, the Superior Court held that Appellee's crime was not infamous due to the misdemeanor grading of a similar Pennsylvania offense, and Appellee seeks to bolster that position by proffering that the maximum prison sentence under the federal statute corresponds to a misdemeanor term of incarceration under the Crimes Code. In this regard, the central theme of both the Superior Court's analysis, and Appellee's presentation, is captured in the intermediate court's assertion that "the definition of 'felony' in Article II, § 7 of the Pennsylvania Constitution should reflect those crimes the Pennsylvania Legislature, not the legislature of a foreign state or of the Congress, chooses to classify as 'felonies.'" *Rambler,* 991 A.2d at 914.

■ It is true, as the Superior Court recognized, that this Court has "adhered to an interpretation in which felonies and *crimen falsi* offenses are distinct (albeit overlapping) categories, both of which contribute to the definition of infamous crimes." *Griffin,* 596 Pa. at 558, 946 A.2d at 674. Consistent with the Superior Court's treatment on this point, however, that statement alone does not mean that all extra-jurisdictional offenses graded as felonies are constitutionally infamous, since it was not made within the context of the issue presented here. Indeed, this Court has not, until now, been presented with focused advocacy concerning whether all such felonies are necessarily infamous crimes for Article II, Section 7 purposes.[4]

4.   It is established that federal criminal convictions can have a disqualifying effect under Article II, Section 7. *See Griffin,* 596 Pa. at 570, 946

Initially, we acknowledge that, as pertains to in-state Crimes, this Court has adopted a posture of deferring to our own Legislature whereby any crime classified as a felony is deemed an infamous one by virtue of such classification. This approach appears to stem ultimately from language in *Commonwealth v. Shaver*, 3 Watts & Serg. 338, 1842 WL 4918 (Pa.1842), suggesting that all felonies are subsumed within the category of infamous crimes. *See id.* at *4.[5] This precept was followed in cases pre-dating the Crimes Code, and has been adhered to in recent cases as well. *See Richard*, 561 Pa. at 499, 751 A.2d at 652–53; *Bolus v. Fisher*, 785 A.2d 174, 178 (Pa.Cmwlth.2001), *aff'd per curiam* 568 Pa. 600, 798 A.2d 1277 (2002). In *Griffin*, we explained that "the Legislature's determination as to whether a particular offense is serious enough at a given time to warrant the status of felony reflects the public will as expressed through the ballot box. . . ." *Griffin*, 596 Pa. at 560, 946 A.2d at 675. Still, it remains possible that the General Assembly may at some point begin to create felony offenses that depart so sharply from what was within the contemplation of *Shaver* and the minds of the framers that the felony label alone will become insufficient. Although a more probing inquiry on the question of constitutional infamy relative to in-state felonies may therefore eventually be implicated, *see generally People ex rel. Keenan v. McGuane*, 13 Ill.2d 520, 150 N.E.2d 168, 175 (1958) ("[T]he determination of what constitutes an infamous crime, insofar as it effects a vacancy in office, is not an exclusive legislative function, but is subject to judicial decision in the light of the common law as it

A.2d at 681; *Petition of Hughes*, 516 Pa. 90, 99, 532 A.2d 298, 303 (1987). Also, the parties agree that Appellee was convicted of a federal felony. The *quo warranto* complaint alleges as much, *see* Complaint at ¶ 8, *reproduced in* R.R. 42, and Appellee's answers admit the allegation. *See* Answer, at ¶ 8, *reproduced in* R.R. 82; Amended Answer, at ¶ 8, *reproduced in* R.R. 86; Second Amended Answer, at ¶ 8, *reproduced in* S.R.R. 2b.

5. The relevant passage in *Shaver* states: "The offences which disqualify a person to give evidence, when convicted of the same, are treason, felony, and every species of the *crimen falsi*—such as forgery, perjury, subornation of perjury, attaint of false verdict, and other offences of the like description, which involve the charge of falsehood, and affect the public administration of justice." *Shaver*, 1842 WL 4918, at *4.

existed when the constitution was adopted[.]"), any such issue along those lines is not presently before the Court.

The salient point, for present purposes, is that there is nothing in the relevant passage in *Shaver* or the ensuing case law that requires substantial deference to out-of-state legislative bodies. Indeed, to the contrary, we believe that assessing constitutional infamy solely upon an extra-jurisdictional felony label may not align well with the framers' intent. Notably, this Court's original expression in *Shaver* suggesting that all felonies are subsumed within the category of infamous crimes was set forth in an era where the term referred to common-law felonies, all involving moral turpitude. *See Commonwealth v. Bolish*, 381 Pa. 500, 510, 113 A.2d 464, 470 (1955) (listing common law felonies such as murder, manslaughter, rape, robbery, larceny, arson, and burglary) (citing CLARK & MARSHALL, CRIMES § 3 (4th ed.1940), and 1 WHARTON, CRIMINAL LAW § 26 (12th ed.1932)), *overruled on other grounds, Commonwealth ex rel. Shadd v. Myers*, 423 Pa. 82, 86, 223 A.2d 296, 299 (1966); *Cure v. State*, 421 Md. 300, 26 A.3d 899, 913 (2011) (same). Matters have changed since *Shaver*: while all felonies were at one time punishable by death, with the rise of the prison system and the disappearance of the death penalty for most felonies, this is no longer the case. *See United States v. Graham*, 169 F.3d 787, 792 (3d Cir.1999). Rather, at least at the federal level, the felony-misdemeanor distinction has now "solidified at the one-year line." *Id.*[6] Thus, although in past centuries it may have been reasonable to assume that the invariably severe punishment for a felony reflected the grave moral transgression inherent in the underlying crime, that assumption has been weakened significantly.

In addition to its theoretical difficulties, a bright-line rule regarding as infamous all extra-jurisdictional felonies, irrespective of the conduct involved, has practical effects that must be considered, particularly in light of a possible proliferation of felonies that may only be *malum prohibitum*. *See*

6. The "one-year line" refers to a classification in which a felony is any crime punishable by imprisonment for more than one year. *See* 18 U.S.C. § 3559(a).

*generally infra* note 7. Indeed, when considering the possibility that unintended consequences could flow from such a bright-line rule, a three-Justice concurrence of the highest court of one of our sister States has observed that blindly deferring to another jurisdiction's felony categorization could result in the disqualification of a voter for violating laws "which are wholly unknown here[, a]nd it would further result that a voter could be disfranchised who is morally blameless according to our own standards[.]" *State ex rel. Barrett v. Sartorious*, 351 Mo. 1237, 175 S.W.2d 787, 791–92 (1943) (Ellison, J., joined by Leedy and Clark, J.J., concurring).[7]

Finally, a bright-line rule would, in effect, obviate the need to consider the circumstances of the crime and determine whether it is similar to those enumerated in *Shaver*. This would be in tension with the manner in which this Court has previously analyzed the disqualifying effects of federal felony offenses committed in Pennsylvania, whereby the behavior of the individual in committing the crime has been subjected to scrutiny. *See, e.g., In re Greenberg*, 442 Pa. 411, 280 A.2d 370 (1971) (per curiam); *Petition of Hughes*, 516 Pa. 90, 532 A.2d 298 (1987);[8] *cf. Commonwealth ex rel. Corbett v. Desiderio*,

---

7. The court in *Melton v. Oleson*, 165 Mont. 424, 530 P.2d 466 (1974), elaborated on this theme, expressing that

> [g]laring injustices would result in many cases. For example, by federal definition the following federal offenses are felonies: Using profanity in a "ham" radio transmission, 18 U.S.C.A. § 1464; purchasing a field jacket from a member of the Armed Forces, 18 U.S.C.A. § 1024; [and] attempting to mail a letter using a stamp which has already been cancelled if committed by a postal employee, 18 U.S.C.A. § 1720. . . . In the instant case none of the three violations of which Melton was convicted would constitute a felony under our statutory definition and classification of crime. . . . We hold that in construing state statutes relating to voter disqualification, a Montana voter cannot be denied the right to vote because of conviction of an offense in federal court that would not be a felony by Montana statutory definition.

*Melton*, 530 P.2d at 470 (citing *Elder v. County Election Bd.*, 326 P.2d 776 (Okla.1958); *Yocham v. Horn*, 201 Okla. 647, 207 P.2d 919 (1948); *State ex rel. Arpagaus v. Todd*, 225 Minn. 91, 29 N.W.2d 810 (1947)).

8. In *Greenberg*, a common pleas judge was convicted in federal court of mail fraud, where the fraud involved a scheme to "kite" bank checks. This Court upheld a ruling that the offense was infamous pursuant to a state constitutional provision similar to the one at issue here. *See* Pa.

698 A.2d 134, 139 (Pa.Cmwlth.1997) (holding that a state Ethics Act violation fell within the ambit of Article II, Section 7, where the person accepted a pecuniary benefit in return for his influence as a public official).

■ In summary, then, this Court has never held that the purposes underlying Article II, Section 7 establish a bright-line rule excluding from public office any person convicted of an extra-jurisdictional felony, regardless of the nature of the offense or the conduct involved. Moreover, we believe that, notwithstanding any "shadow" that such a conviction may cast upon an individual, *State ex rel. Chavez v. Evans*, 79 N.M. 578, 446 P.2d 445, 450 (1968), such a rule would be broader than necessary to effectuate the intent underlying the adoption of that provision, as it could result in the exclusion of a large group of otherwise qualified potential officeholders whose offenses did not involve dishonest or immoral behavior. This outcome could potentially occur due to a multiplication of extra-jurisdictional offenses nominally categorized as felonies, where many are of an essentially regulatory nature, being *malum prohibitum* as opposed to *malum in se*.[9]

Notably, however, the Superior Court's decision to follow the felony-versus-misdemeanor classification of the closest Pennsylvania crime it could find is also without precedent.

CONST. art. VI, § 7 ("All civil officers shall hold their offices on the condition that they behave themselves well while in office, and shall be removed on conviction of misbehavior in office or of any infamous crime."). In so doing, the Court focused on the dishonest nature of the judge's behavior and explained that such conduct undermined public confidence in an honest and independent judiciary. *See Greenberg*, 442 Pa. at 416, 280 A.2d at 372.

The *Hughes* Court determined that the conduct underlying the federal felony of which the individual had been convicted was tantamount to bribery under Pennsylvania law. Since bribery is expressly enumerated as an infamous crime in Article II, Section 7, the Court held that disqualification was appropriate. *See Hughes*, 516 Pa. at 96, 532 A.2d at 301.

9. Nothing in this discussion undermines the validity of the result reached in *Griffin*, as that case dealt with a felony that not only involved dishonesty, but was also a *crimen falsi* offense that undermined the administration of justice. *See Griffin*, 596 Pa. at 560–62, 946 A.2d at 675–76.

From the above discussion, it should be evident that such a methodology, being essentially mechanical in nature, is equally at odds with this Court's approach to assessing constitutional infamy with regard to foreign convictions.

Thus, when analyzing the state constitutional implications of a federal felony conviction, it is appropriate to consider the character of the underlying conduct, rather than simply looking to the federal label, or the categorization associated with a similar state offense. *Accord State ex rel. Wier v. Peterson*, 369 A.2d 1076, 1079 (Del.1976) ("[T]he totality of the circumstances in each case must be examined before a determination may be made that a specific felony is infamous."). More particularly, reviewing courts should assess constitutional infamy by taking into consideration whether public officials who engage in such conduct may still command public confidence as concerns their honesty, decency, and good moral character. Such an inquiry aligns with the purposes underlying Section 7, pertaining to the trust that the public reposes in its governing officials. *See Hughes*, 516 Pa. at 98, 532 A.2d at 302; *Griffin*, 596 Pa. at 568, 946 A.2d at 680. We therefore agree with the Illinois Supreme Court's rather concise formulation, when it explained that

> any public officer convicted, in the Federal court or in the court of any sister State, of a felony which falls within the general classification of being inconsistent with commonly accepted principles of honesty and decency ... stands convicted of an infamous crime under the common law as interpreted when our constitution was adopted in 1870, and ... such conviction creates a vacancy in such office.

*People ex rel. Taborski v. Ill. Appellate Court*, 50 Ill.2d 336, 278 N.E.2d 796, 798 (1972) (quoting *McGuane*, 150 N.E.2d at 176). Indeed, this Court recently observed that the understanding of the term "infamous" at common law subsumed these very types of concerns:

> [U]nder the early common law certain crimes were called "infamous" on account of the shameful status which resulted to the person convicted of one of them. Crimes which were

regarded as infamous were treason, felonies, any offense tending to pervert the administration of justice, and such crimes as came within the general scope of the term "crimen falsi" of the Roman law, such as perjury, subornation of perjury, barratry, conspiracy, swindling, cheating, and other crimes of a kindred nature.

*Griffin*, 596 Pa. at 559, 946 A.2d at 674 (quoting M.C. Dransfield, Annotation, *What is an Infamous Crime or One Involving Moral Turpitude Constituting Disqualification to Hold Public Office*, 52 A.L.R.2d 1314, § 2(a)) (emphasis removed).

As applied presently, it is undisputed that, through his use of the United States mails, Appellee sought to reap dishonest gain: he attempted to steal from other persons by threatening to subject them to public shame and embarrassment if they refused to send him their money. This type of behavior is, quite obviously, "inconsistent with commonly accepted principles of honesty and decency," and is, moreover, akin to "swindling, cheating, and other crimes of a kindred nature." *See generally* BLACK'S LAW DICTIONARY 585 (6th ed.1990) (reflecting that "extortion" is a species of theft). Therefore, regardless of the manner in which the General Assembly has elected to categorize the similar offense codified at 3923(a)(3) of the Crimes Code, we conclude, for the reasons given, that the federal offense to which Appellee pleaded guilty is an infamous one for purposes of Article II, Section 7 of the Pennsylvania Constitution.[10]

▮ As a final matter, although Appellee renews his arguments sounding in due process and laches, those claims have not been addressed by the Superior Court, *see supra* note 2, nor are they subsumed within the question we accepted for review. Because Appellee preserved such contentions in his appeal to the Superior Court, to the extent they are justiciable they should be disposed of, in the first instance, in that forum.

10. In view of our holding, we need not address whether the offense is *crimen falsi*.

Accordingly, the order of the Superior Court is vacated and the case is remanded to that court for further proceedings consistent with this Opinion.

Chief Justice CASTILLE, Justices EAKIN, BAER, TODD, McCAFFERY, and ORIE MELVIN join the opinion.