**[J-2-2014]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**

**CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, MCCAFFERY, STEVENS, JJ.**

| | | |
|---|---|---|
| ANTHONY BURKE, BY HIS PARENT AND NATURAL GUARDIAN, JOHN BURKE, | : | No. 31 EAP 2013 |
| | : | |
| | : | Appeal from the Judgment of Superior |
| | : | Court entered on 8/13/12 at 2299 EDA |
| Appellant | : | 2011, reversing the order of 7/19/11 in |
| | : | the Court of Common Pleas of |
| | : | Philadelphia County, Civil Division, at |
| v. | : | 2226 February term 2010 |
| | : | |
| | : | |
| | : | |
| INDEPENDENCE BLUE CROSS, | : | |
| | : | |
| Appellee | : | ARGUED: May 7, 2014 |

**OPINION**

**MR. JUSTICE SAYLOR**                    **DECIDED:  October 31, 2014**

At issue in this case is whether an insured party may lodge an appeal to court from an administrative decision denying insurance benefits for autism-related services.

Appellant, a six-year-old boy diagnosed with an autism-spectrum disorder, was receiving applied behavior analysis ("ABA"), a type of autism-related service, in his home.  ABA was covered by his family's insurance policy with Appellee Independence Blue Cross ("Insurer").   Appellant's family requested that Insurer cover similar ABA services to be provided at Appellant's elementary school beginning August 25, 2009.  Insurer denied the request, pointing to a place-of-service exclusion in the policy which specified that no services would be covered if the care was provided at certain types of

locations, including schools.[1] This decision was unsuccessfully appealed internally. The dispute was then submitted to an independent external review agency appointed by the Pennsylvania Department of Insurance. See 40 P.S. §764h(k)(1). In December 2009, that agency upheld the denial based on the policy's place-of-service exclusion.

Meanwhile, the General Assembly passed Act 62 of 2008,[2] which, inter alia, requires that health insurance policies provide coverage for the treatment of autism-spectrum disorders. See 40 P.S. §764h(a) ("A health insurance policy . . . covered under this section shall provide to covered individuals or recipients under twenty-one (21) years of age coverage . . . for the treatment of autism spectrum disorders."). On January 1, 2010, that provision began applying to the insurance policy at issue in this case. There is no dispute that ABA services constitute treatment for Act 62 purposes.

In February 2010, Appellant filed a complaint in the court of common pleas, couched as a statutory appeal, albeit seeking declaratory and injunctive relief in the form of a ruling that the policy's place-of-service exclusion is null and void under Act 62, as well as an order directing Insurer to cover Appellant's medically necessary treatments. Insurer filed responsive pleadings and Appellant requested judgment on the pleadings. Thereafter, the parties agreed that the matter comprised an agency appeal pursuant to subsection (k)(2) of Act 62 (quoted in relevant part below). The

---

[1] The relevant provision in Insurer's policy excludes coverage for care in schools, homes for the aged, institutions for children with intellectual disabilities, and the like. See Insurance Policy at 70. Insurer argued before the common pleas court that place-of-service exclusions are common and represent a form of quality control since insurers cannot monitor services delivered in those settings.

[2] Act of July 9, 2008, P.L. 885, No. 62, §3, amending the Insurance Company Law of May 17, 1921, P.L. 682, No. 284, by adding Section 635.2, relating to coverage for autism spectrum disorders (set forth at 40 P.S. §764h).

parties additionally submitted a stipulation of facts.  The court then received the certified record, briefing, and oral argument.

In July 2011, the common pleas court rendered its decision, noting first that, pursuant to the parties' stipulation, the only issue before it was whether Act 62 voided the place-of-service exclusion during the relevant period of January 1 to July 1, 2010 (at which time the policy converted to a form not governed by Act 62), or whether that exclusion was a valid "general exclusion" allowed under Section 764h(c).[3]  The court ultimately rejected the argument that the policy's place-of-service exclusion is a general exclusion as contemplated by Section 764h(c).  Thus, it held that, under Section 764h(a), Insurer was required to provide coverage for school-based ABA services during the relevant time period.  The common pleas court ordered Insurer to "take action consistent with this decision."  Burke v. Independence Blue Cross, 24 Pa. D.&C.5th 457, 2011 WL 10525398, at *6 (C.P. Phila. July 19, 2011).  The court did not discuss any issue related to jurisdiction.

On appeal, the Superior Court, sua sponte, questioned whether the common pleas court should have entertained the appeal under Act 62, which provides:

> An insurer or covered individual or an authorized representative may appeal to a court of competent jurisdiction an order of an expedited independent external review disapproving a denial or partial denial. Pending a ruling of such court, the insurer shall pay for those services, if any, that have been authorized or ordered until such ruling.

40 P.S. §764h(k)(2) (emphasis added).  The Superior Court pointed out that, under subsection (k)(2), a statutory appeal is only authorized relative to a decision

---

[3] "Coverage under [Section 764h] shall be subject to copayment, deductible and coinsurance provisions and any other general exclusions or limitations of a health insurance policy or government program to the same extent as other medical services covered by the policy or program are subject to these provisions."  40 P.S. §764h(c).

"disapproving" a denial, whereas the external review agency had approved a denial of coverage in the present case. See Burke v. Independence Blue Cross, No. 2299 EDA 2011, slip op. at 3 (Pa. Super. Aug. 13, 2012) (unpublished memorandum). Thus, the intermediate court reversed the trial court's order without addressing the merits.

We allowed review to consider whether individuals diagnosed with autism-spectrum disorders have the right to judicial review of a denial of insurance coverage, considering the above-quoted language of Act 62. See Burke v. Independence Blue Cross, 620 Pa. 598, 71 A.3d 249 (2013) (per curiam). Because interpretation of this statutory provision, and a broader assessment of the jurisdiction of the courts, involve pure questions of law, see Focht v. Focht, 613 Pa. 48, 52, 32 A.3d 668, 670 (2011); Commonwealth v. Holmes, 593 Pa. 601, 614, 933 A.2d 57, 65 (2007), our review is undertaken de novo. See Hearst Television, Inc. v. Norris, 617 Pa. 602, 612, 54 A.3d 23, 29 (2012).

Insurer first questions whether this case is justiciable. Although Insurer primarily relies on the mootness doctrine, its argument touches on concepts of ripeness and standing as well. See generally Rendell v. Pa. State Ethics Comm'n, 603 Pa. 292, 307, 983 A.2d 708, 717 (2009) ("Several discrete doctrines – including standing, ripeness, and mootness – have evolved to give body to the general notions of case or controversy and justiciability."). As for ripeness, Insurer notes that the external-agency decision appealed from pre-dated January 1, 2010, the date Act 62 began applying to the insurance policy. As to standing, Insurer avers that Appellant never supplied any evidence that his family had incurred out-of-pocket expenses for the delivery of ABA services at his school. Finally, regarding mootness, Insurer contends that the matter was moot by the time the common pleas court rendered its July 2011 decision since the period of coverage, ending on July 1, 2010, had by then expired.

We initially reject the challenges to ripeness and standing. In the first instance, such challenges – which are subject to issue preservation requirements, see Rendell, 603 Pa. at 307-08, 983 A.2d at 717-18 – were not raised at the common pleas level, and thus, are waived.[4] Even apart from waiver, the challenges are meritless. By the time the controversy reached the common pleas court in February 2010, Act 62's requirements had begun to apply to the insurance policy, thus causing the coverage denial to give rise to an injury that was "fully formed." Elend v. Basham, 471 F.3d 1199, 1205 (11th Cir. 2006). Insofar as standing is concerned, the relief sought was forward-looking, at least in substantial part, meaning that the family was not required to incur out-of-pocket expenses as a prerequisite to declaratory and injunctive relief.

The claim of mootness, by contrast, stands on the predicate that a subsequent change in circumstances has eliminated the controversy so that the court lacks the ability to issue a meaningful order, that is, an order that can have any practical effect. Such an argument, like all claims disputing the existence of a case or controversy, is intertwined with the precept that Pennsylvania courts do not issue purely advisory opinions. See, e.g., Pittsburgh Palisades Park, LLC v. Commonwealth, 585 Pa. 196, 203, 888 A.2d 655, 659 (2005). In In re Gross, 476 Pa. 203, 382 A.2d 116 (1978), for example, this Court dismissed as moot a case in which a patient had objected to having a mental health facility administer medication against his will. The case was dismissed because by the time it reached this Court the plaintiff was no longer a patient at the facility, and hence, "there was nothing for the lower court to enjoin, nor can this Court

---

[4] In opposing judgment on the pleadings, Insurer did argue that the controversy might not be justiciable, but only on the grounds that it was unclear whether Appellant's school permitted on-site delivery of the types of services for which Appellant was seeking coverage. See Memorandum of Law of Defendant Independence Blue Cross in Opposition to Plaintiff's Motion for Judgment on the Pleadings, at 9, reprinted in R.R. 91a.

now order the injunctive relief sought below." Id. at 211, 382 A.2d at 120-21; see also Allen v. Birmingham Twp., 430 Pa. 595, 244 A.2d 661 (1968) (finding moot an appeal of a common pleas court's refusal to enjoin an excavation where the excavation had been completed); Strassburger v. Phila. Record Co., 335 Pa. 485, 487, 6 A.2d 922, 923 (1939) (dismissing as moot an appeal from the denial of an injunction of a shareholder's meeting where the meeting had already occurred).  Here, if Appellant never sought autism services between January 1 and July 1, 2010, it would be impossible for an order to issue that has any practical effect for the parties before us.  Factual development would then be required to verify whether that is, in fact, true – i.e., whether Appellant's family incurred out-of-pocket expenses that should now be indemnified.

We need not remand for such proceedings because, even to the extent the controversy might be moot, it "appears to implicate exceptions to the mootness doctrine for issues that are of great public importance or are capable of repetition while evading review." Commonwealth ex rel. Kearney v. Rambler, 613 Pa. 32, 40, 32 A.3d 658, 663 (2011).  This is so due to:  (a) the prevalence of autism-spectrum-disorder diagnoses; and (b) the significant amount of time that ordinarily elapses between when an insurer originally denies coverage and when this Court – after multiple levels of administrative and judicial review – finally rules on whether such denial was permissible under Act 62. Moreover, as in Rendell, "we have before us a narrow, focused, purely legal issue in sharp controversy" between the parties, in which the salient legal analysis is unaffected by the extra-record circumstances raised by Insurer. Rendell, 603 Pa. at 309, 983 A.2d at 718.  Additionally, the interpretive question involved affects potentially thousands of individuals across the Commonwealth diagnosed with autism-spectrum disorders within the context of an enactment governing insurance coverage for those individuals.  Under

these circumstances, we find it appropriate to undertake the evaluative task raised by the underlying facts relative to the availability of judicial review.

Appellant proffers that Section 764h(k)(2) contains a "patent contradiction," Brief for Appellant at 28, because, on one hand it gives a right of appeal to a "covered individual," but on the other hand it limits that right to situations where the individual would not want to appeal because he or she prevailed at the administrative level. Appellant thus argues that the statute is ambiguous, necessitating reference to the rules of statutory construction. Applying such rules, Appellant relies on legislative history, together with the directive contained in Section 764h(a) requiring coverage for autism services, for the position that Act 62's purposes include the creation of appeal rights for families to guard against the improper denial of autism coverage, a purpose that would be frustrated by affirmance of the Superior Court's order.[5] As well, Appellant contends that a literal interpretation of the phrase "disapproving a denial or partial denial" would: lead to an absurd result where insurers would have a right of statutory appeal but insureds would not – which would also violate the principle that the Legislature is presumed to favor the public interest over private interests, see 1 Pa.C.S. §1922; see also 42 Pa.C.S. §4902(1) (reflecting a legislative finding that equal access to the justice system is of paramount importance); contradict the precept that statutes should be construed, if possible, to give effect to all their provisions, see 1 Pa.C.S. §1921(a); and

---

[5] As for legislative history, Appellant and multiple amici curiae provide extensive quotations of floor remarks by individual legislators. In one illustrative example the bill's sponsor in the House expressed that the statute "will provide essential protections against inappropriate denials [of coverage] on the front end, while a new expedited review process for denied claims will provide those protections on the back end." House Legislative Journal, July 1, 2008, at 1736 (remarks of then-Speaker Dennis O'Brien), quoted in Brief for Appellant at 31.

raise possible constitutional difficulties under the Remedies Clause, see PA. CONST. art. I, §11.

Insurer maintains there is no ambiguity in the statute, which provides for an appeal from the "disapproval" of a denial of insurance benefits, but not from the approval of a denial, as occurred in this case. Insurer adverts to the established precepts that: words and phrases are to be read according to their common and approved usage, see 1 Pa.C.S. §1903(a); when the words of a statute are clear and free from all ambiguity, their plain meaning is generally the best indication of legislative intent, see White Deer Twp. v. Napp, 603 Pa. 562, 578, 985 A.2d 745, 754 (2009); and under such circumstances the letter of the law should not be disregarded under the pretext of pursuing its spirit, see 1 Pa.C.S. §1921(b). Thus, Insurer concludes that the Superior Court correctly applied the plain text of Section 764h(k)(2), and that to hold otherwise would amount to a judicial re-writing of the statute. See generally Commonwealth v. Scolieri, 571 Pa. 658, 668, 813 A.2d 672, 678 (2002) (stating that appellate courts should not "act as an editor for the General Assembly" even where doing so would "creat[e] an improved statute"); Pap's A.M. v. City of Erie, 553 Pa. 348, 363, 719 A.2d 273, 281 (1998) (indicating that the judicial rewriting of a statute would violate the separation-of-powers doctrine), rev'd on other grounds, 529 U.S. 277, 120 S. Ct. 1382 (2000).

As for Appellant's reference to legislative history and various rules of statutory construction, Insurer urges that these only apply where the statute is ambiguous, see O'Rourke v. DOC, 566 Pa. 161, 172-73, 778 A.2d 1194, 1201 (2001), meaning that it is reasonably susceptible of two different interpretations, see Delaware Cnty. v. First Union Corp., 605 Pa. 547, 557, 992 A.2d 112, 118 (2010), which it argues is not the case here. In this latter regard, Insurer characterizes Appellant's assertion of an

ambiguity as being, at bottom, an appeal to fairness, which is inapposite to statutory language that is clear and free from ambiguity. Finally, Insurer offers that, in any event, an insured party such as Appellant, aggrieved by the ruling of an external review agency, is in a superior position to an aggrieved insurer since the insured can bring a de novo breach-of-contract action whereas an aggrieved insurer is limited to a statutory appeal under Section 764h(k)(2) with its more limited scope of review.

By Section 764h(k)(2)'s plain text, judicial review only pertains to that class of external review agency orders "disapproving a denial or partial denial." A disapproval of a denial represents a decision by an external review agency that coverage should be provided.[6] Therefore, any such disapproval is adverse to the position adopted by the insurance company during the internal review phase, and favorable to the insured. Consequently, we agree with Appellant that an insured individual would never be aggrieved by such a disapproval, and hence, would never seek to appeal it. Because subsection (k)(2) expressly gives the right of judicial review to covered individuals and their representatives, its application only to disapprovals of denials demonstrates that there is a patent inconsistency within its four corners, and indeed, Appellant's description of such inconsistency as a "conflict" seems apt.

We do not, however, conclude that this means the statute is ambiguous. An ambiguity exists when there are at least two reasonable interpretations of the specific text under review. See First Union, 605 Pa. at 557, 992 A.2d at 118 (citing Trizechahn Gateway LLC v. Titus, 601 Pa. 637, 653, 976 A.2d 474, 483 (2009)). Here, the text

---

[6] It is undisputed that a "denial or partial denial" is a denial of insurance coverage for autism services – that is, a decision by an insurer that coverage is not available. This is made clear by the preceding subsection, which refers to a "denial or partial denial by an insurer of . . . a claim for treatment of autism spectrum disorders," 40 P.S. §764h(k)(1), and sets forth the internal and external review procedures that are prerequisites to judicial review as prescribed by subsection (k)(2).

admits of only one reasonable interpretation – that a decision <u>disapproving</u> a denial or partial denial may be appealed – albeit, as discussed, one of the parties given this right would never have cause to exercise it. The statutory text thus reveals, not an ambiguity, but an asymmetry stemming from an apparent legislative oversight.[7] It unambiguously provides an illusory right of judicial review to aggrieved individuals. The General Assembly evidently meant to say "approving or disapproving," but instead only said "disapproving." Therefore, this is the rare case in which the plain text of an unambiguous statute does not appear to be the best indication of legislative intent. The question, then, centers on the appropriate judicial response to this state of affairs.

Initially, we are mindful of the precept that courts cannot insert words into a statute. Thus, we may not, under the guise of statutory construction, simply rewrite Section 764h(k)(2) to say "approving or disapproving." <u>See</u> <u>Karoly v. Mancuso</u>, 619 Pa. 486, 499 n.7, 65 A.3d 301, 309 n.7 (2013) (referencing the "established precept that it is improper for this Court to supply legislative omissions"); <u>Commonwealth v. Shafer</u>, 414 Pa. 613, 621, 202 A.2d 308, 312 (1964) (same, even where the omission may have

---

[7] Thirty Members of the Pennsylvania House of Representatives have jointly submitted an <u>amicus</u> brief suggesting that this was indeed a legislative oversight, as they intended for Act 62 to benefit individuals needing autism services. Former House Speaker Dennis O'Brien has filed a separate <u>amicus</u> brief to the same effect.

An asymmetry of this nature is to be distinguished from a latent ambiguity. <u>See</u> <u>Mohamed v. PennDOT</u>, 615 Pa. 6, 19-20, 40 A.3d 1186, 1193-94 (2012). A latent ambiguity is an actual ambiguity that arises when text that was originally thought clear is revealed to contain an ambiguity upon consideration of extraneous facts and circumstances. <u>See</u>, <u>e.g.</u>, <u>Steuart v. McChesney</u>, 498 Pa. 45, 53, 444 A.2d 659, 663 (1982); <u>Logan v. Wiley</u>, 357 Pa. 547, 548, 55 A.2d 366, 367 (1947); <u>Easton v. Washington Cnty. Ins. Co.</u>, 391 Pa. 28, 35, 137 A.2d 332, 336 (1958) ("The usual instance of a latent ambiguity is one in which a writing refers to a particular person or a thing and is thus apparently clear on its face, but upon application to external objects is found to fit two or more of them equally.").

resulted from inadvertence). In this regard, we agree with the Superior Court to the extent it concluded that <u>appellate</u> jurisdiction was lacking under that provision.

On the other hand, individuals in Appellant's position must have access to a judicial forum to test whether Act 62 precludes the denial of coverage in the circumstances, as the deprivation of such access would, as Appellant suggests, be constitutionally problematic.[8] In this regard, we note that the Declaratory Judgments Act, 42 Pa.C.S. §§7531-7541, makes judicial proceedings available to settle one's rights with respect to the application of a statute. <u>See</u> 42 Pa.C.S. §§7532, 7533; <u>see also id.</u> §7541(a) (requiring that the Declaratory Judgments Act be liberally construed "to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations"). Further, nothing in Act 62 purports to obviate this avenue of relief. Finally, under our rules, aggrieved parties are permitted to seek both declaratory and injunctive relief, as Appellant did here, via a single complaint filed in the court's original jurisdiction. <u>See</u> Pa.R.C.P. 1602.

Appellant's initial pleading was styled simply as a "Complaint," and the sum and substance of its averments is no different than if it had been filed as an original-jurisdiction action seeking declaratory and injunctive relief in the ordinary manner. This is relevant because "courts in this Commonwealth and elsewhere have traditionally looked to the substance rather than the form of the complaint to determine matters of jurisdiction." <u>Stackhouse v. Pa. State Police</u>, 574 Pa. 558, 565, 832 A.2d 1004, 1008-09 (2003); <u>see also id.</u> at 564-65, 832 A.2d 1004, 1008-09 (citing cases). Although

---

[8] We are not as certain as the Insurer that Appellant could have obtained relief via a breach-of-contract action. That the insurance policy excludes coverage for autism services provided in a school setting is not in dispute. <u>See</u> Stipulation ¶5. Hence, any right to such coverage would proceed from Act 62 and not from the terms of the contract.

Stackhouse made that observation in the context of a dispute concerning which of two forums had original jurisdiction, the principle applies as well to the existence of jurisdiction to decide a controversy, and it favors such existence although there may be some formal defect in the papers filed, so long as the complaint in its substance is the type of matter that could be entertained by the tribunal in question.

Notably, Pennsylvania's Judicial Code embodies the same general teaching:

If an appeal is improvidently taken to a court under any provision of law from the determination of a government unit where the proper mode of relief is an action in the nature of equity, mandamus, prohibition, quo warranto or otherwise, this alone shall not be a ground for dismissal, but the papers whereon the appeal was taken shall be regarded and acted on as a complaint or other proper process commenced against the government unit or the persons for the time being conducting its affairs and as if filed at the time the appeal was taken.

42 Pa.C.S. §708(b). The phrase, "or otherwise," is plainly broad enough to include an action requesting declaratory and injunctive relief. Accord Smith v. Springfield Twp. Bd. of Supervisors, 787 A.2d 1112, 1117 (Pa. Cmwlth. 2001). Moreover, although an external review agency may not, strictly speaking, be a "government unit," it is, at a minimum, quasi-governmental insofar as it is the entity designated by the Department of Insurance to handle appeals from final determinations of an insurance provider denying coverage. In this sense, the external reviewer acts as an agent performing adjudicative duties on behalf of the Department under the statutory scheme set forth by Act 62. Thus, in keeping with the liberal interpretation that this Court has traditionally given to the above provision as a means of effectuating its remedial purpose, see, e.g., Giovagnoli v. State Civil Serv. Comm'n (Monroe Cnty. Children & Youth Servs.), 581 Pa. 655, 663-64 & n.7, 868 A.2d 393, 398-99 & n.7 (2005) (broadly construing Section 708(b) to subsume petitions for leave to appeal where the statutory text only refers to "appeals"), we conclude that it encompasses the type of improvident appeal filed in the

present case – particularly where, as here, the appeal is only "improvident" because of an apparent legislative drafting error.[9]

Here, we are faced with a situation in which a litigant sought a declaration of his rights under a legislative enactment, a task over which the common pleas court could have exercised jurisdiction, pursuant to the Declaratory Judgments Act, in response to the correct form of pleading. Furthermore, the complaint's asserted basis for jurisdiction was deficient only because of the confusion created by an apparent drafting mistake by our General Assembly. Neither the court nor the defendant Insurer realized that anything was amiss in this regard and, if they had, Appellant could presumably have made any necessary formal corrections.[10] Under these circumstances, we conclude that the common pleas court was permitted to reach the substantive claim forwarded in Appellant's pleadings. It follows that the intermediate court should not have reversed the order of that court by <u>sua sponte</u> pointing to the language of Section 764h(k)(2) as a

---

[9] By way of analogy, in the appellate arena our rules seek to ensure that parties are not placed out of court solely due to defects in the form of a pleading. Rule 1503 specifies that if an appeal is improvidently taken from an order of a government unit, "this alone shall not be a ground for dismissal," but the papers "shall be regarded and acted upon as a petition for review of such governmental determination and as if filed at the time the improvident matter was commenced." Pa.R.A.P. 1503. <u>See Moore v. Pa. Bd. of Prob. & Parole</u>, 592 Pa. 25, 25 n.1, 922 A.2d 882, 882 n.1 (2007) (<u>per curiam</u>) (characterizing Rule 1503 as a "safe-harbor rule"); <u>Auditor Gen. v. Borough of E. Washington</u>, 474 Pa. 226, 231, 378 A.2d 301, 304 (1977) (observing that, under the appellate rules, "[a]ctions brought in the wrong form should not be dismissed, but should be regarded as having been filed in the proper form, although amendment may be required . . . for clarification").

[10] <u>Smith</u> involved a situation where the common pleas court dismissed the improvident appeal and the Commonwealth Court vacated and remanded to permit the litigants to re-style their appeal as an original-jurisdiction declaratory judgment action. In the present case, the common pleas court effectuated the same result by simply issuing its legal analysis on the merits notwithstanding that the jurisdictional basis asserted in the complaint was inadequate.

bar to Appellant's ability to seek relief in a judicial forum, without first evaluating whether the common pleas court's assessment of the substantive question could be justified on some other basis.

In this latter regard, while challenges to subject matter jurisdiction are not subject to waiver and may indeed be ruled upon by a court sua sponte, see, e.g., Mazur v. Trinity Area Sch. Dist., 599 Pa. 232, 240, 961 A.2d 96, 101 (2008), it bears observing that the jurisdictional defect in this case was not, in actuality, one of subject matter: it did not pertain to "the competency of the court to determine controversies of the general class to which the case presented for consideration belongs," In re Admin. Order No. 1-MD-2003, 594 Pa. 346, 354, 936 A.2d 1, 5 (2007), since, as explained, the common pleas court was competent to address Appellant's requests for declaratory and injunctive relief as he presented them in his complaint. Rather, the pleading defect only pertained to the fact that Appellant invoked the common pleas court's appellate jurisdiction pursuant to Act 62 instead of directing the complaint to the court's original jurisdiction.

For the reasons given, the order of the Superior Court is reversed and the matter is remanded to that tribunal for consideration of the merits of the appeal.


Former Justice McCaffery did not participate in the decision of this case.

Mr. Chief Justice Castille, Mr. Justice Eakin, Madame Justice Todd and Mr. Justice Stevens join the opinion.

Mr. Justice Baer concurs in the result.