IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven Gidumal and Virtus Capital    :
Advisors, LLC,    :
                   Petitioners    :
    :
          v.    :    No. 518 C.D. 2023
    :    Argued: June 4, 2024
Department of Transportation    :
(State Board of Property),    :
                 Respondent    :

BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
                HONORABLE MATTHEW S. WOLF, Judge
                HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY SENIOR JUDGE LEAVITT            FILED:  July 19, 2024

Steven Gidumal and Virtus Capital Advisors, LLC (collectively, Gidumal) petition for review of an adjudication of the State Board of Property (Board of Property or Board) dismissing as moot Gidumal's petition to quiet title. In that petition, Gidumal sought a ruling to invalidate certain easements that the Pennsylvania Department of Transportation (PennDOT) had recorded on Gidumal's real property.  PennDOT conceded that Gidumal owned the property free of PennDOT's easements and, thereafter, filed a declaration of taking to acquire the easements in question.  The Board of Property concluded that Gidumal's quiet title petition was mooted by PennDOT's declaration of taking.  On appeal, Gidumal argues that PennDOT's condemnation did not moot its quiet title petition, and, in the alternative, even if his petition was moot, the Board of Property should have decided the merits of Gidumal's quiet title petition as an exception to the mootness doctrine. For the reasons to follow, we affirm.

At issue is a 47-acre tract of land located at 649-651 Headquarters Road, Ottsville, in Tinicum Township, Pennsylvania (Property). By Deed Poll on August 9, 2019, the Bucks County Sheriff sold the Property to the trustee for the mortgage company holding the mortgage lien. On January 17, 2020, PennDOT purchased 0.016 acres of the Property from the trustee for a right-of-way, 0.005 acres as a slope easement, and 0.068 acres as a temporary construction easement. PennDOT did so in preparation of its removal and replacement of a 200-year-old bridge located on Headquarters Road. On September 30, 2020, PennDOT recorded its easements with the Bucks County Recorder of Deeds.

In the interim, Gidumal purchased all 47 acres of the Property from the trustee by special warranty deed dated June 25, 2020. That deed did not state that the Property was burdened by PennDOT's easements. On August 6, 2020, Gidumal recorded his deed with the Bucks County Recorder of Deeds.

In February of 2021, Gidumal learned that PennDOT planned to replace the historic bridge on Headquarters Road adjacent to the Property. Gidumal then learned that PennDOT had recorded easements on the Property in September of 2020.

In February 2022, Gidumal filed a petition to quiet title with the Board of Property. The petition contested PennDOT's claim to have a right-of-way, a slope easement, and a temporary construction easement over the Property. Gidumal's petition sought a determination that PennDOT was not the rightful owner of any easements on the Property.

On November 2, 2022, PennDOT notified Gidumal that it intended to file a declaration of taking to re-establish these easements. Supplemental Reproduced Record at 23b (S.R.R. __). On November 16, 2022, Gidumal filed a

2

motion for summary judgment asserting that, as a *bona fide* purchaser, Gidumal owned the Property free and clear of PennDOT's easements. Gidumal also sought sanctions. On November 30, 2022, PennDOT filed a declaration of taking in the Court of Common Pleas of Bucks County to acquire, in fee simple, a right-of-way, a slope easement, and a temporary construction easement on the Property. S.R.R. 1b-10b.

On April 24, 2023, the Board of Property granted summary judgment to Gidumal. It reasoned that Gidumal was entitled to judgment as a matter of law as the *bona fide* purchaser for value without actual or constructive knowledge of PennDOT's easements that had not been recorded when Gidumal acquired the Property. Because Gidumal recorded his deed before PennDOT recorded its easements, those purported easements were invalid.

The following day, April 25, 2023, the Board of Property vacated its order of April 24, 2023, explaining that it "was not the document approved by the Board at its meeting on April 20, 2023." Board Order, 4/25/2023, at 1; Reproduced Record at 298 (R.R. __).[1]

Also, on April 25, 2023, the Board of Property issued an adjudication dismissing Gidumal's petition as moot. It explained that on November 30, 2022, PennDOT filed a declaration of taking to condemn a fee simple right-of-way, a slope easement, and a temporary construction easement to "secure the very same easements" that were the subject of the quiet title action. Board Adjudication, 4/25/2023, at 2. It reasoned as follows:

---

[1] The Reproduced Record does not comport with Pennsylvania Rule of Appellate Procedure 2173, PA.R.A.P. 2173 (requiring that the pagination of reproduced records be in the form of an Arabic number followed by a small "a"). For ease, the Court will utilize the method used in the Reproduced Record.

3

> It is clear that, regardless of the merits of [Gidumal's] claim, through the condemnation process [PennDOT] has now become the owner of those rights. A tribunal will generally not decide moot questions . . . Because [Gidumal] cannot receive the relief [he] seek[s] even if [he is] correct about the invalidity of the right[-]of[-]way and easements [PennDOT] purportedly acquired from the trustee, this matter is moot.

Board Adjudication, 4/25/2023, at 2.

With regard to Gidumal's request for sanctions, the Board explained as follows:

> [Gidumal] ask[s] for an award of attorney fees and costs, because [PennDOT] had initiated a new taking/condemnation action for the same easement despite having represented to the Board (and other agencies) that it already owned the purported easement. [Gidumal] assert[s] that [PennDOT's] action is an admission that its prior easement purchase is void and its recording practices fraudulent. [Gidumal] describe[s] this condemnation as a cynical and calculated action intended to deprive [his] due process rights and as contemptuous of the Board's jurisdiction. To the contrary, the Board considers [PennDOT] to have acted responsibly in reevaluating its position. [Gidumal has] not cited any authority for the Board to award attorney fees or costs, and the Board is not aware of any such authority. The Board declines to consider any award.

*Id*. at 3.

Gidumal petitioned for this Court's review.

4

On appeal,[2] Gidumal raises two issues.[3]  First, he argues that the Board of Property erred in dismissing his quiet title action as moot because a final adjudication had not yet been issued in the condemnation proceeding.  Second, he argues that the Board of Property's first decision, granting judgment in his favor, was correct and should be reinstated. PennDOT's asserted easements were fraudulent because they were not timely recorded.

Section 1207 of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, provides, in part, that the Board of Property "shall . . . have jurisdiction to hear and determine cases involving title to land or interest therein brought by persons who claim an interest in the title to lands occupied or claimed by the Commonwealth."  71 P.S. §337.  *See also Krulac v. Pennsylvania Game Commission*, 702 A.2d 621, 623 (Pa. Cmwlth. 1997) ("Section 1207 vests in the Board . . . *exclusive* original jurisdiction over *any* claims involving title to land occupied or claimed by the Commonwealth, such as claims in actions to quiet title."). Where a dispute does not involve title to, or interest in, a property claimed by the Commonwealth, the Board of Property lacks jurisdiction.  *Mahanoy Township Authority v. Pennsylvania Game Commission*, 838 A.2d 839, 841 (Pa. Cmwlth. 2003).

Private property can be condemned for public use upon payment of just compensation.  PA. CONST. art. I, §10 ("nor shall private property be taken or applied

---

[2] This Court's standard of review on appeal "requires that we affirm the Board's adjudication in a quiet title action unless the adjudication is in violation of [Gidumal's] constitutional rights, or it is not in accordance with law, or if any of the Board's findings of fact to support its adjudication [are] not supported by substantial evidence." *O'Layer McCready v. Department of Community & Economic Development*, 204 A.3d 1009, 1016 n.4 (Pa. Cmwlth. 2019); *see also Beishline v. Department of Environmental Protection*, 234 A.3d 878, 885 n. 8 (Pa. Cmwlth. 2020).  Our scope of review on questions of law is *de novo*.  *Id*.

[3] For purposes of this opinion, we have reordered Gidumal's issues on appeal.

to public use, without authority of law and without just compensation"). PennDOT is an authorized condemnor. Section 2003(e)(1) of The Administrative Code of 1929, Act of April 9, 1929, P.L. 177, *as amended*, 71 P.S. §513(e)(1). Condemnation proceedings are governed by the Eminent Domain Code, 26 Pa. C.S. §§101-1106. It provides that once a declaration of taking is filed, title automatically passes to the condemnor. 26 Pa. C.S. §302(a)(2) ("title which the condemnor acquires in the property condemnation shall pass to the condemnor on the date of the filing" of the declaration of taking). The only inquiries are whether the declaration is legally valid, 26 Pa. C.S. §306, and if so, the amount of just compensation owed by the condemnor, 26 Pa. C.S. §502 ("appointment of viewers to ascertain just compensation").

With this background, we address Gidumal's issues seriately.

In his first issue, Gidumal argues that the Board of Property erred in dismissing as moot his quiet title action one day after granting him summary judgment. He contends that because the condemnation proceedings are still pending, the matter is not moot. In the alternative, Gidumal argues that his quiet title action should be decided as an exception to the mootness doctrine.

Gidumal argues that a determination as to who owned the Property prior to the filing of PennDOT's declaration of taking has a material impact on litigation taking place before the Pennsylvania Environmental Hearing Board, in which Gidumal and the Delaware Riverkeeper Network are parties. They have challenged the water obstruction and encroachment permit issued by the Pennsylvania Department of Environmental Protection to authorize PennDOT to remove an historic bridge and to construct a replacement bridge. Gidumal vigorously challenges the permit as endangering a high-quality Pennsylvania stream and allowing the destruction of an important historic structure. Gidumal points out that

6

on the permit application, PennDOT claimed, incorrectly, to own easements on the Property. PennDOT's fraudulent representations on these permit applications, Gidumal argues, renders these applications nullities. Therefore, the Board of Property needs to establish the status of the Property's ownership before PennDOT filed its declaration of taking.

PennDOT responds that the Board of Property properly dismissed Gidumal's quiet title claim as moot. The filing of the declaration of taking for easements on the Property ended the legal controversy, and no cloud of title remains under 21 P.S. §§351[4] and 444[5] because PennDOT has identified Gidumal as the sole

---

[4] Section 1 of the Act of May 12, 1925, P.L. 613, *as amended*, 21 P.S. §351. This provision states:

> All deeds, conveyances, contracts, and other instruments of writing wherein it shall be the intention of the parties executing the same to grant, bargain, sell, and convey any lands, tenements, or hereditaments situate in this Commonwealth, upon being acknowledged by the parties executing the same or proved in the manner provided by the laws of this Commonwealth, shall be recorded in the office for the recording of deeds in the county where such lands, tenements, and hereditaments are situate. *Every such deed, conveyance, contract, or other instrument of writing which shall not be acknowledged or proved and recorded, as aforesaid, shall be adjudged fraudulent and void as to any subsequent bona fide purchaser or mortgagee or* holder of any judgment, duly entered in the prothonotary's office of the county in which the lands, tenements, or hereditaments are situate, without actual or constructive notice unless such deed, conveyance, contract, or instrument of writing shall be recorded, as aforesaid, before the recording of the deed or conveyance or the entry of the judgment under which such subsequent purchaser, mortgagee, or judgment creditor shall claim. Nothing contained in this act shall be construed to repeal or modify any law providing for the lien of purchase money mortgages.

*Id*. (emphasis added).

[5] Section 1 of the Act of March 18, 1775, Sm. L. 422, *as amended*, 21 P.S. §444. It states:

> *All deeds* and conveyances, which, from and after the passage of this act, *shall be made and executed within this commonwealth of or concerning any lands*, tenements or hereditaments in this commonwealth, or whereby the title to the same may be in any way affected in law or equity, *shall be acknowledged by the grantor, or grantors*, bargainor or bargainors, or proved by one or more of the subscribing witnesses thereto, before one of the judges of the supreme court, or before one of

owner of the Property on its recorded right-of-way plans and the declaration of taking.

Generally, courts will dismiss a case as moot "unless an actual case or controversy exists at all stages of the judicial or administrative process." *Consol Pennsylvania Coal Company, LLC v. Department of Environmental Protection,* 129 A.3d 28, 38 (Pa. Cmwlth. 2015) (quoting *Horsehead Resource Development Company v. Department of Environmental Protection*, 780 A.2d 856, 858 (Pa. Cmwlth. 2001)). A claim of mootness "stands on the predicate that a subsequent change in circumstances has eliminated the controversy so that the court lacks the ability to issue a meaningful order, that is, an order that can have any practical effect." *Kupershmidt v. Wild Acres Lakes Property Owners' Association*, 143 A.3d 1057, 1061 (Pa. Cmwlth. 2016) (quoting *Burke v. Independence Blue Cross*, 103 A.3d 1267, 1271 (Pa. 2014)). Nevertheless, there are exceptions to mootness. They include circumstances where (1) the complained of conduct is capable of repetition

---

the judges of the court of common pleas, or recorder of deeds, prothonotary, or clerk of any court of record, justice of the peace, or notary public of the county wherein said conveyed lands lie, and *shall be recorded in the office for the recording of deeds where such lands*, tenements or hereditaments *are lying and being, within ninety days after the execution of such deeds or conveyance*, and every such deed and conveyance that shall at any time after the passage of this act be made and executed in this commonwealth, and which shall not be proved and recorded as aforesaid, shall be adjudged fraudulent and void against any subsequent purchaser or mortgagee for a valid consideration, or any creditor of the grantor or bargainor in said deed of conveyance, and all deeds or conveyances that may have been made and executed prior to the passage of this act, having been duly proved and acknowledged as now directed by law, which shall not be recorded in the office for recording of deeds in the county where said lands and tenements and hereditaments are lying and being, within ninety days after the date of the passage of this act, shall be adjudged fraudulent and void as to any subsequent purchaser for a valid consideration, or mortgagee, or creditor of the grantor, or bargainor therein.

*Id.* (emphasis added).

8

yet likely to evade judicial review; (2) the case involves issues of great public importance; or (3) a party will suffer a detriment in the absence of a court decision. *Lutz v. Tanglwood Lakes Community Association, Inc.,* 866 A.2d 471, 473 (Pa. Cmwlth. 2005).

Gidumal's petition to quiet title contested PennDOT's claim to own three easements on his Property. However, with the filing of its declaration of taking, PennDOT effected a transfer of title of those three easements as of the declaration's date of filing. 26 Pa. C.S. §302(a)(2). Because PennDOT now owns those rights as a matter of law, there is no controversy remaining for the Board of Property to adjudicate.[6]

The litigation before the Environmental Hearing Board does not implicate the mootness analysis. As PennDOT observes, the Department of Environmental Protection "does not review property issues during its analysis of a permit application for a bridge." Environmental Hearing Board Opinion and Order on Supersedeas, 4/1/2022, at 36; S.R.R. Exhibit A. Rather, the Department is concerned with the environmental impact of the bridge replacement project and "not with any property disputes" that may arise out of that project. *Id.* Accordingly, whether PennDOT's claim to own easements on the permit applications was false has no relevance to the merits of the permits issued by the Department of Environmental Protection to PennDOT. Gidumal, along with the Delaware Riverkeeper Network, can continue to challenge the environmental merits of whether PennDOT's bridge replacement project was properly permitted.

---

[6] Should Gidumal succeed in overturning the condemnation, title in the Property will be revested in him. 26 Pa. C.S. §306(f) ("The court shall determine promptly all preliminary objections and make preliminary and final orders and decrees as justice shall require, including the revesting of title.").

The conclusion that the matter is moot is inescapable. PennDOT now owns a right-of-way, a slope easement, and a temporary construction easement on the Property. There is nothing for the Board of Property to decide.

Nevertheless, Gidumal argues, in the alternative, that even if mootness has been established, the underlying issues here are likely to recur yet evade judicial review. Absent a decision on Gidumal's quiet title action, PennDOT will continue to "run roughshod over" the rights of property owners in derogation of "Pennsylvania property law and the Eminent Domain Code." Gidumal Reply Brief at 8. Gidumal further posits that PennDOT will continue to take "opposite positions in different fora," as it did here. Gidumal Brief at 23. Specifically, PennDOT claimed, untruthfully, to own the easements both before the Board of Property and the Environmental Hearing Board. Then it took a contrary position in the common pleas court by claiming in its declaration of taking that Gidumal owned the easement rights.

PennDOT responds that none of the exceptions to the mootness doctrine apply. First, there is no possibility of repetition because the question of the ownership of the easements has now been resolved. Second, Gidumal will not suffer any detriment in litigation before the Environmental Hearing Board as a result of the Board of Property's decision because the validity of PennDOT's easement acquisition by condemnation is irrelevant to the validity of the permit issued by the Department of Environmental Protection. Third, Gidumal has not raised an issue of public importance.

"[A]n issue is capable of repetition but will likely evade review where 'the duration of the challenged action [is] too short to be fully litigated prior to its cessation or expiration; and . . . there is a reasonable expectation that the same

10

complaining party will be subjected to the same action again.'" *Driscoll v. Zoning Board of Adjustment of City of Philadelphia*, 201 A.3d 265, 269 (Pa. Cmwlth. 2018) (quoting *Clinkscale v. Department of Public Welfare*, 101 A.3d 137, 139-40 (Pa. Cmwlth. 2014) (alterations in original)).

There is no possibility that Gidumal will be subject to the same action again because PennDOT's condemnation has resolved the issue of Gidumal's title to the Property free of PennDOT's recorded easements. Nevertheless, Gidumal argues that repetition is possible with other parties, which is also why the matter is one of great public importance. He argues that the public has a "strong interest" in preventing PennDOT from "surreptitiously recording instruments in real property" and then "condemning the same property when it became apparent it may not get its way." Gidumal Brief at 22. This approach clogs the "courts and administrative bodies" with litigation in which PennDOT takes whatever position suits its interest in that forum regardless of the inconsistency with positions taken in other tribunals. *Id*.

The "public importance exception is very rarely applied" and requires "exceptional circumstances" or "questions of great public importance." *Driscoll*, 201 A.3d at 271 (quoting *Harris v. Rendell*, 982 A.2d 1030, 1037 (Pa. Cmwlth. 2009)). The exception involves such matters as the "loss of educational subsidies for public schools, impacts on citizens' ability to register to vote," and "higher prices for public transportation." *Driscoll*, 201 A.3d at 272. Stated otherwise, a matter of great public importance is one that affects many citizens.

Here, PennDOT purchased the easements before Gidumal purchased the Property. When PennDOT realized its recording error, it made the matter right by undertaking a second purchase of those easements. Presumably, purchasing the

11

same property twice will be lesson enough to PennDOT on the need for prompt recordation of its property acquisitions. Further, as the Board of Property noted, PennDOT's "attempt to condemn real property that is at issue in a proceeding before the Board is no more contemptuous of the Board's authority to adjudicate the matter than [PennDOT's] attempt to negotiate the purchase of the property from the petitioner, i.e., an offer of settlement." Board Adjudication, 12/5/2022, at 2; R.R. 151.

In sum, we reject Gidumal's argument on repetition and public importance. The claim that PennDOT may deceive other property owners in the future is speculative and unfounded. In any case, there is no evidence that PennDOT planned to deceive Gidumal by asserting that it owned easements that were, in fact, recorded.

Finally, Gidumal claims he will suffer a detriment without a decision on the merits of his quiet title action. We disagree. Gidumal will be awarded just compensation for PennDOT's acquisition of easements on the Property. 26 Pa. C.S. §502. We cannot assume the condemnation proceeding will award anything other than just compensation. Likewise, Gidumal is in no way hindered in his ability to attempt to block PennDOT's project by challenging the permits that have been issued by the Department of Environmental Protection. No detriment has been shown.

A determination by the Board of Property would be advisory and without effect.[7] None of the exceptions to mootness apply. Accordingly, we affirm the order of the Board dismissing as moot Gidumal's quiet title action.[8, 9]

_____
MARY HANNAH LEAVITT, President Judge Emerita

---

[7] At argument, counsel for Gidumal acknowledged that even if Gidumal prevailed before the Board of Property, PennDOT would not be prohibited from going forward and condemning the Property.

[8] Because Gidumal's quiet title action is moot, we need not address his second issue on appeal, which seeks reinstatement of the Board of Property's order of April 24, 2023.

[9] On December 15, 2023, Gidumal submitted a letter to the Court, pursuant to PA. R.A.P. 2501(b) (relating to post-submission communications), advising of a recent decision from the common pleas court in the condemnation proceeding. In that proceeding, PennDOT conceded that Gidumal owns the Property. PennDOT filed an application to strike Gidumal's submission, asserting that there was no basis for a supplemental submission under PA. R.A.P. 2501(b) that would impact Gidumal's appeal to this Court. Application to Strike ¶4. We agree. The issue in the appeal before this Court is whether the Board of Property properly dismissed the quiet title action as moot once PennDOT filed its declaration of taking. Conversely, the common pleas court decided Gidumal's challenge to the declaration of taking. Accordingly, Gidumal's supplemental submission is stricken.

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Steven Gidumal and Virtus Capital :
Advisors, LLC, :
    Petitioners :
       :
  v.    :  No. 518 C.D. 2023
       :
Department of Transportation :
(State Board of Property), :
    Respondent :

## ORDER

    AND NOW, this 19th day of July, 2024, the adjudication of the State Board of Property, dated April 25, 2023, in the above-captioned matter, is AFFIRMED.

    The Department of Transportation's Motion to Strike Supplemental Submission is GRANTED.

         _____
         MARY HANNAH LEAVITT, President Judge Emerita