IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PennEnvironment and Sierra Club,      :
                                 Petitioners      :
     :
         v.                       :
     :
Department of Environmental      :
Protection and PPG Industries,      :
Inc. (Environmental Hearing Board),      :     No. 566 C.D. 2024
                       Respondents      :     Argued: February 4, 2025

BEFORE:     HONORABLE ANNE E. COVEY, Judge
                    HONORABLE CHRISTINE FIZZANO CANNON, Judge
                    HONORABLE MARY HANNAH LEAVITT, Senior Judge

OPINION
BY JUDGE FIZZANO CANNON                            FILED: March 11, 2025

Before the Court is a petition for review by two nonprofit environmental organizations, PennEnvironment and Sierra Club (jointly, PennEnvironment), asserting error by the Department of Environmental Protection (Department), Environmental Hearing Board (Board), in determining that a letter of credit (LOC) provided to the Department by PPG Industries, Inc. (PPG) was sufficient financial assurance of PPG's ability to fund environmental cleanup, monitoring, and related costs (Costs)[1] at a waste site in Armstrong County (Site) in perpetuity. The crux of PennEnvironment's argument is that a contractual provision in a Consent Order and Agreement (COA) between PPG and the Department, as amended (Amended COA), expressly requires PPG to provide financial assurance,

---

[1] As set forth more fully below, Costs at the Site include "implementation and post-closure care, including without limitation long-term monitoring, operation and maintenance and replacement costs necessary to effectuate and maintain the remedy required by the [Consent Order and Agreement (COA), as amended (Amended COA)], or a revision of the remedy should the original fail." Reproduced Record (R.R.) at 62a.

*i.e.*, the LOC, in an amount sufficient to fund Costs at the Site in perpetuity, but that the Department accepted insufficient financial assurance, largely because it improperly defined "in perpetuity" as being only 30 years. After careful review, we disagree and affirm the Board's order.

## I. Background

From roughly 1953 until 1970, PPG used the Site to dispose of glass polishing slurry waste and solid waste from its glass manufacturing plant in Ford City, Pennsylvania. *PennEnvironment*, Docket No. 2022-032-B Pa. Env't Hearing Bd., Apr. 9, 2024) (Bd. Dec.) at 4. The area where PPG disposed of slurry waste is known as the Slurry Lagoon Area (SLA). *Id.* The area where PPG disposed of solid waste is known as the Solid Waste Disposal Area (SWDA). PPG's disposals in both areas created risks to the environment; precipitation and groundwater in contact with slurry waste in the SLA form a high-pH leachate containing dissolved metals and silica, and the soil in the SWDA contains lead and arsenic. R.R. at 472a & 479a. The contaminated leachate in the SLA will continue to form until all of the slurry waste has leached out, which could take centuries. R.R. at 370a-71a & 487a-88a; *PennEnvironment v. PPG Indus., Inc.*, 587 F. Supp. 3d 285, 292 & n.11 (W.D. Pa. 2022) (*PennEnvironment I*).

In 2012, PennEnvironment sued PPG in federal court under the federal Clean Water Act, 33 U.S.C. § 1365(a)(1); the federal Resource Conservation and Recovery Act, 42 U.S.C. § 6972(a)(1)(B); and Section 601(c) of the Pennsylvania Clean Streams Law (Clean Streams Law),[2] 35 P.S. § 691.601(c). PennEnvironment

---

[2] Act of June 22, 1937, P.L. 1987, *as amended*, 35 P.S. §§ 691.1-691.1001.

2

sought declaratory and injunctive relief regarding the Site under the Clean Streams Law and federal laws, as well as civil penalties under federal law.

In 2019, in a separate proceeding related to the federal litigation, PPG negotiated the COA with the Department pursuant to the Land Recycling and Environmental Remediation Standards Act, also known as Act 2,[3] which provided for a Sitewide remedy to abate contamination and set forth PPG's compliance obligations. R.R. at 3a-47a. Following settlement of most of the claims in the federal litigation, PPG and the Department entered into the Amended COA. R.R. at 48a-64a. Pertinent here, Paragraph 13 of the Amended COA required PPG to provide financial assurances for the payment of Costs at the Site, as follows:

> Within thirty (30) days of the execution of this [Amended COA], PPG shall submit documentation for the provision of financial assurances to the Department in an amount sufficient to secure the implementation and post-closure care, including without limitation long-term monitoring, operation and maintenance and replacement costs necessary to effectuate and maintain the remedy required by the [COA] and this [Amended COA], or a revision of the remedy should the original fail, in perpetuity. Said financial assurances shall consist of an irrevocable [LOC] and a standby trust in favor of the Department that conforms to the requirements of 25 P[a.] Code [§] 287 . . . and/or letter of credit and standby trust provisions established by 40 C[.]F[.]R[.] 264.143(d) and 264.145(d).

R.R. at 62a.

PPG first submitted its proposal of financial assurances to the Department in December 2020. Bd. Dec. at 11. The proposal included two letters of credit to fund the initial remedies at the SLA and the SWDA, as well as the LOC for Costs at the Site. *Id.* The proposal included detailed cost estimates covering

---

[3] Act of May 19, 1995, P.L. 4, No. 2, 35 P.S. §§ 6026.101-6026.908.

various aspects of construction and subsequent maintenance and monitoring. *Id.* at 11-14. The estimates also included allowances for inflation, administrative fees, project management fees, and contingencies. *Id.* at 15.

The Department's approval process for PPG's submission of financial assurances was a 16-month undertaking. *See generally* Bd. Dec. at 15-18. In January 2021, following an initial review, the Department requested additional documentation supporting PPG's projection of Costs, which PPG submitted. *Id.* at 16. The Department's initial reviewing engineer, Mr. Strittmatter, was then satisfied that PPG's "estimates were reliable and that PPG's proposed financial assurance was sufficient to maintain the Site-Wide [sic] Remedy in perpetuity." *Id.* Nonetheless, after Mr. Strittmatter retired in late 2021, his successor, Mr. Martel, conducted his own review of Mr. Strittmatter's assessment of PPG's submission. *Id.* In April 2022, the Department approved PPG's proffered LOC in the amount of $12,363,864. *Id.* at 17. Although the Department initially approved PPG's financial assurances without the required standby trust, PPG subsequently set up the standby trust in November 2022. *Id.* at 17-18.

Actual Costs for 2022 were about $110,000 below PPG's estimate. Bd. Dec. at 14. Through the week of the 2023 hearing before the Board, actual Costs for 2023 were between 30 and 35% below PPG's budget. *Id.*

PennEnvironment challenged the Department's approval of PPG's financial assurances before the Board, contending that the Department erred in approving the LOC and standby trust as adequate assurances that Costs will be funded in perpetuity. Following a hearing, the Board upheld the Department's approval of PPG's financial assurances and dismissed PennEnvironment's appeal. PennEnvironment's petition for review in this Court followed.

## II. Issues

In its petition for review in this Court, PennEnvironment first and primarily argues that the Board erred in determining that financial assurances of 30 years of Costs was equivalent to assurance of funding in perpetuity. In a related sub-argument, PennEnvironment contends that projected future revisions were not accounted for and included in calculating the requisite financial assurances. In a second related sub-argument, PennEnvironment posits the Board should not have deemed moot the Department's initial failure to require a standby trust as provided in the Amended COA. Finally, PennEnvironment maintains that the Department violated its fiduciary duties under the Pennsylvania Constitution and the Clean Streams Law by its purported failure to require adequate financial assurances from PPG.

## III. Discussion

The Pennsylvania Constitution includes a provision known as the Environmental Rights Amendment, which provides:

> The people have a right to clean air, pure water, and to the preservation of the natural, scenic, historic and esthetic values of the environment. Pennsylvania's public natural resources are the common property of all the people, including generations yet to come. As trustee of these resources, the Commonwealth shall conserve and maintain them for the benefit of all the people.

Pa. Const. art. I, § 27. The Pennsylvania Supreme Court has expounded on the importance of the Environmental Rights Amendment as follows:

> The decision to affirm the people's environmental rights in a Declaration or Bill of Rights, alongside political rights, is relatively rare in American constitutional law. In addition to Pennsylvania, Montana and Rhode Island are

5

the only other states of the Union to do so. *See* Pa. Const. art. I, § 27 (1971); Mt. Const. art. II, § 3 (1889); R.I. Const. art. I, § 17 (1970). . . .

That Pennsylvania deliberately chose a course different from virtually all of its sister states speaks to the Commonwealth's experience of having the benefit of vast natural resources whose virtually unrestrained exploitation, while initially a boon to investors, industry, and citizens, led to destructive and lasting consequences not only for the environment but also for the citizens' quality of life. Later generations paid and continue to pay a tribute to early uncontrolled and unsustainable development financially, in health and quality of life consequences, and with the relegation to history books of valuable natural and esthetic aspects of our environmental inheritance. The drafters and the citizens of the Commonwealth who ratified the Environmental Rights Amendment, aware of this history, articulated the people's rights and the government's duties to the people in broad and flexible terms that would permit not only reactive but also anticipatory protection of the environment for the benefit of current and future generations. Moreover, public trustee duties were delegated concomitantly to all branches and levels of government in recognition that the quality of the environment is a task with both local and statewide implications, and to ensure that all government neither infringed upon the people's rights nor failed to act for the benefit of the people in this area crucial to the well-being of all Pennsylvanians.

*Pa. Env't Def. Found. v. Commonwealth*, 161 A.3d 911, 918-19 (Pa. 2017) (quoting *Robinson Twp, Wash. Cnty.. v. Commonwealth*, 83 A.3d 901, 960-63 (Pa. 2013) (additional indent omitted)). The critical importance of restoring and protecting Pennsylvania's environment, and the resulting fiduciary duties imposed on the Commonwealth and its agencies by the Environmental Rights Amendment, *see Pa. Env't Def. Found.*, provide the backdrop against which we analyze the Amended

COA and the Department's determination of adequate financial assurances that PPG will fund Costs at the Site in perpetuity.

Notwithstanding the importance of enforcing the Environmental Rights Amendment, however, this Court's review of a Board adjudication implicating such enforcement is limited. We must affirm the Board's order unless we conclude "that the adjudication is in violation of the constitutional rights of the [petitioner], or is not in accordance with law, . . . or that any finding of fact made by the [Board] and necessary to support its adjudication is not supported by substantial evidence . . . ." *Tire Jockey Serv. v. Dep't of Env't Prot.*, 915 A.2d 1165, 1185 (Pa. 2007) (quoting 2 Pa.C.S. § 704) (additional quotation marks omitted).

With these governing principles in mind, we address the issues raised by PennEnvironment on review.

## A. Funding "in Perpetuity" under the Amended COA

The Board is "a quasi-judicial agency independent of [the Department]." *Cole v. Pa. Dep't of Env't Prot.*, 257 A.3d 805, 809 (Pa. Cmwlth. 2021), *aff'd*, 329 A.3d 1228 (Pa. 2025) (additional citation omitted). The Board is not an appellate body having a limited scope of review. In matters challenging action of the Department, the Board conducts a *de novo* hearing to determine the propriety of the Department's action; the burden of proof lies with the party asserting the challenge.[4] *Id.* at 808 (citing *Trout v. Pa. Dep't of Env't Prot.*, 863 A.2d 93, 105-06 (Pa. Cmwlth. 2004)); 25 Pa. Code § 1021.122(c)(4) (providing that "[a] party

---

[4] Accordingly, "[o]n appeal from a decision of the Board, the Court 'must review the adjudication of the Board rather than the administrative action which was reviewed by the Board.'" *United Ref. Co. v. Dep't of Env't Prot.*, 163 A.3d 1125, 1136 (Pa. Cmwlth. 2017) (quoting *Warren Sand & Gravel Co., Inc. v. Dep't of Env't Prot.*, 341 A.2d 556, 565 (Pa. Cmwlth. 1975) (additional quotation marks omitted)).

appealing an action of the Department shall have the burden of proof . . . [w]hen [the] party appeals or objects to a settlement of a matter between the Department and another private party").

Here, the Board found that PennEnvironment "has not met its burden to show by a preponderance of the evidence that the Department's action approving the [LOC] in the amount of $12,363,864 was unreasonable, unlawful and not in accordance with the Department's statutory or constitutional duties." Bd. Dec. at 60. We are constrained to affirm the Board's determination.

We agree with PennEnvironment that 30 years is not, on its face, a proxy for "in perpetuity"; indeed, the Board found that "PPG and the Department acknowledge that 30 years is not perpetuity . . . ." Bd. Dec. at 38. However, PennEnvironment's argument mistakes the Department's position. The Department did not equate 30 years with "perpetuity" as a definition of that term. Rather, the Department concluded, after extensive analysis, that an LOC representing 30 years of Costs would, in practice, yield sufficient funds to cover Costs in perpetuity. The Board agreed, stating:

> In evaluating the two experts['] [present value (PV)] numbers, we conclude that PPG's expert, Mr. Bummer, arrived at a more realistic PV amount that is reflective of the facts in this case. We are satisfied that his calculations demonstrate that *even at the current value of the [LOC], the Department will have sufficient funds to take over the [Costs] at the PPG Waste Site and complete the required work in perpetuity if PPG were to default at this time.* In fact, the Department's amount of $12,363,864[] exceeds what Mr. Bummer determined was necessary by approximately $5,473,676, providing a sizeable cushion to address any needs not fully accounted for in his numbers. Our conclusion is reinforced by the requirement that the Department and PPG, with oversight by [PennEnvironment], must review [C]osts at the . . . Site on

8

> an annual basis and adjust the amounts of future . . . letters of credit accordingly to reflect any changes to the funds required.

Bd. Dec. at 59 (emphasis added); *see also id.* at 37-38 (explaining that the Department recognized that 30 years was not perpetuity but argued that the actual effect of the calculations made using its bonding worksheets would be to provide sufficient Costs in perpetuity).

As the Board implicitly acknowledged in its decision, calculating the financial assurance required to fund PPG's obligations in perpetuity was a complicated and multifaceted process. *See, e.g.*, Bd. Dec. at 2 (reciting the Board's earlier denial of summary judgment because "the case presented complex issues of fact and law . . ."). In approving PPG's financial assurances proffered through the LOC, the Department pointed to multiple factors that, in the Department's view, combined to make the LOC sufficient.

First, the 30-year period is not fixed as of the date of the COA. Rather, because the LOC will automatically renew annually, the period for which financial assurance is provided will likewise shift annually and will always be 30 years ahead. Thus, funding will not expire in 30 years.

Further, the Department can review the financial assurance amount periodically, and if experience indicates the LOC is not adequate, the Department can adjust the required amount upward for the next year's LOC. As quoted above, the Board in its decision determined that "the Department and PPG, with oversight by [PennEnvironment], *must* review the [C]osts at the . . . Site on an annual basis . . . ." Bd. Dec. at 59 (emphasis added). PennEnvironment suggests that the Board erred in assuming mandatory periodic review of the LOC amount by the Department in determining adequate financial assurance because, although the

9

Department "may" conduct periodic reviews, it is not expressly required to do so by the applicable regulation. Br. of PennEnvironment at 24 (quoting and discussing 25 Pa. Code § 287.332(c) ("Periodically after the date on which a bond was required to be submitted under this subchapter, the Department *may* determine the adequacy of bond amount requirements for residual waste processing or disposal facilities and, if necessary, require additional bond amounts.") (emphasis added)). PennEnvironment argues that the Board erred by construing the regulation's permissive review language as mandatory. However, we must presume that the Department will perform its duties under the Amended COA, including any needed reviews. *Accord Pettit v. State Civ. Serv. Comm'n*, 285 A.2d 223, 224 (Pa. Cmwlth. 1971) (applying a "presumption that an administrative agency has properly performed its duties"). In any event, as the Board observed, PennEnvironment has oversight going forward to assure that reviews are performed as needed. *See* Bd. Dec. at 59; *see also id.* at 60 (expressing confidence that PennEnvironment "will maintain a watchful eye on the work at the . . . Site and if it concludes that the Department's annual review and approval process is not adequately accounting for activities and costs at the . . . Site, it will take action to address those concerns"). Therefore, PennEnvironment's implied assertion that the Department, notwithstanding its stated commitment to do so, will not perform necessary and authorized periodic reviews of the adequacy of PPG's financial assurance in the absence of a specific regulatory mandate is not well taken.

Moreover, any default by PPG in paying Costs will trigger the Department's right to draw on the LOC in its entirety and deposit the funds into the standby trust, which is dedicated solely to paying Costs for the Site. Investment of

10

those funds will yield income that the Department calculates will fully fund Costs in the future.

Thus, the Department did not determine that "in perpetuity" in the Amended CO *meant* for 30 years; nor did the Department decide that PPG needed to provide sufficient financial assurance to cover Costs for only 30 years *instead of* in perpetuity. Rather, the Department, after careful analysis, determined that an LOC in an amount equal to 30 years of Costs would, through the functioning in the future of the various factors discussed above, provide sufficient ongoing funding to cover Costs in perpetuity in the event of a default by PPG. Notwithstanding PennEnvironment's characterization, the real issue is not the *definition* of "in perpetuity" as a contract term, but rather, the proper *methodology* for the calculation of the financial assurance needed in order to fund Costs at the Site in perpetuity. Therefore, contrary to PennEnvironment's assertion, the true issue is one of fact, not law. That distinction is fatal to PennEnvironment's argument.

PennEnvironment points to the Amended COA's requirement that PPG "submit documentation" of financial assurances "in an amount sufficient" to sustain Costs at the Site "in perpetuity." R.R. at 62a. PennEnvironment insists this requirement means "that financial assurances must be fully funded at their inception." Br. of PennEnvironment at 26. In other words, PennEnvironment maintains that the LOC must secure an amount that is presently large enough to pay all Costs at the Site in perpetuity. PennEnvironment posits that the LOC does not meet this requirement. We disagree. Essentially, the Board credited PPG's evidence that the current LOC approved by the Department is large enough that, even if PPG were to default immediately, the Department could draw on the current LOC immediately and deposit the proceeds into the standby trust, and those proceeds

11

would be sufficient to fund Costs at the Site in perpetuity, in large part because investing the funds would yield income for the standby trust that would fund Costs. Bd. Dec. at 59.

Calculating the future Costs at the Site in perpetuity necessarily involved extensive and complex financial projections and estimations. To the extent that PennEnvironment disputes the Board's determination of the amount of financial assurance necessary to cover Costs in perpetuity, that determination presented questions of fact, not law as suggested by PennEnvironment's argument. The Board's determination involved weighing the expert testimony and other evidence offered by the parties in the hearing before the Board. The Board's written decision demonstrates its careful and thorough consideration of the evidence, including detailed discussion of each expert's testimony and its credibility, the functioning of the LOC and the standby trust, PPG's use of the Department's bonding worksheets in calculating its proposal, the effect of the 30-year timeframe in the worksheets on the perpetual nature of the funding requirement, calculation of present value of the future Costs, and the reliability of the Department's commitment to annual reviews. *See* Bd. Dec. at 18-25 & 34-60. Unfortunately for PennEnvironment, the Board credited the evidence offered by PPG and the Department, as well as their experts, of what ongoing Costs will be and the adequacy of the approved LOC as financial assurance that Costs will be funded in perpetuity. *Id.* at 59-60.

This Court is bound by the Board's findings of fact, including its credibility determinations; we may not disturb those findings on appeal. *See United Ref. Co. v. Dep't of Env't Prot.*, 163 A.3d 1125, 1134 & 1136 (Pa. Cmwlth. 2017) (observing that "expert testimony is required where the issues require scientific or specialized knowledge or experience to understand . . ." and that the petitioner failed

12

to meet its burden of proof where it failed to present credible expert testimony; explaining that, because the Board had weighed the expert scientific evidence and made credibility determinations in support of its decision, asking this Court to conclude that precautions were necessary beyond those imposed by the Board, the petitioner was "essentially asking this Court to reweigh the evidence and make credibility determinations regarding the validity of [the p]etitioner's concerns, which is beyond our purview"). Accordingly, we are constrained to conclude that the Board did not err in upholding the Department's calculation of sufficient financial assurances that Costs at the Site will be funded in perpetuity.

## B. Future Revision Expenses

PennEnvironment contends that expenses for projected future revisions were not accounted for and included in calculating the requisite financial assurances. Specifically, PennEnvironment posits that the Board should not have upheld the Department's finding that PPG's financial assurances were adequate because there was no specific line item relating to the expense of revision or wholesale replacement of the original remedy should that original remedy fail. We discern no merit in PennEnvironment's argument.

PennEnvironment acknowledges that the Board received evidence indicating that revision expenses were included in the engineering expenses and contingencies built into the calculation of adequate financial assurances and that those expenses could best be addressed, if necessary in the future, through the Department's periodic reviews. However, PennEnvironment insists that revision expenses are separate from other future expenses and "cannot be accounted for in the engineering estimates . . . ." Br. of PennEnvironment at 36-37.

13

In its findings of fact, the Board acknowledged that PPG's submission of financial assurances to the Department did not include a separate line item for potential revision expenses. Bd. Dec. at 12 & 56. However, the Board determined "that the annual review and revision process will adequately address the need for any major equipment replacements that may arise in the future." *Id.* at 48. The Board explained:

> We acknowledge [PennEnvironment's] concern that if/when PPG defaults, requiring the Department to draw on the then current [LOC], the amount of seed money deposited into the standby trust will be at a set amount without the possibility for future adjustment. If the Department and PPG fail to diligently conduct the annual review and adjust the amount of future [LOCs] when necessary, including any future need for a wholesale revision, the possibility does exist that the funds available may prove to be insufficient to fully cover [C]osts at the . . . Site. However, we find that it would be inappropriate for us to speculate that the Department will not take the required actions to ensure that this does not happen. We are also confident that [PennEnvironment] will maintain a watchful eye on the work at the . . . Site and if it concludes that the Department's annual review and approval process is not adequately accounting for activities and costs at the PPG Waste Site, it will take action to address those concerns.

Bd. Dec. at 59-60.

Absence of a specific line item is not determinative of whether revision expenses were considered in the Department's calculation of adequate financial assurances. Clearly, the Board credited the evidence that PennEnvironment disputes. As explained above, determining the credibility of the evidence is squarely within the Board's purview, and this Court is bound by the Board's factual determinations.

14

PennEnvironment also repeats its assertion that the Department is not expressly *required* by the terms of the Amended COA to perform periodic reviews, and therefore, revision costs should be expressly listed in the calculation of adequate financial assurances. We reject this argument for the same reasons set forth in the previous section. We discern no error in the Board's decision regarding revision expenses.

### C. Mootness

Before the Board, PennEnvironment asserted that the Department acted improperly by failing to require the establishment of a standby trust at the time PPG submitted its adequate assurances of funding to the Department. However, the standby trust was established seven months later and was in place before the Board rendered its decision. As PPG had committed no default in its funding obligations that would have allowed the Department to draw on the LOC prior to the establishment of the standby trust, no harm resulted from the delay in setting up the trust. Therefore, as the trust was in place for future deposits of proceeds from the LOC if needed, the Board determined that PennEnvironment's assertion concerning the absence of the trust was moot. Bd. Dec. at 61. PennEnvironment insists the Board erred in that determination. We disagree.

A claim is moot where a court can grant no meaningful relief. *Shirley v. Pa. Legis. Reference Bureau*, 318 A.3d 832, 850 (Pa. 2024) (quoting *Burke ex rel. Burke v. Indep. Blue Cross*, 103 A.3d 1267, 1271 (Pa. 2014) (explaining that a claim becomes moot when "a subsequent change in circumstances has eliminated the controversy so that the court lacks the ability to issue a meaningful order, that is, an order that can have any practical effect")). Here, PennEnvironment complains of

15

the Department's failure to compel PPG to set up the standby trust that was mandated by the Amended COA. However, that trust has now been established. Because the Department had no occasion to deposit any funds into the trust during the period of delay in its establishment, no harm resulted from that delay. Now that the standby trust is in place, its future availability, if needed, is assured. Thus, that controversy has been eliminated; there was no meaningful relief that the Board could grant and no error in its mootness determination.

PennEnvironment contends that the Department might terminate the standby trust in the future and that, therefore, the issue is not moot. We reject that contention as purely speculative. A claim is moot unless there is an actual controversy at all stages of the litigation. *Horsehead Res. Dev. Co. v. Dep't of Env't Prot.*, 780 A.2d 856, 858 (Pa. Cmwlth. 2001) (additional citations omitted). Speculation that an event may occur at some future time does not constitute an actual existing controversy. *See id.* at 859 (rejecting an argument against mootness that was based on a hypothetical future event).

It is true that an exception to mootness may be found where a matter is capable of repetition and yet may escape judicial review. *Horsehead Res.*, 780 A.2d at 858. Here, however, PennEnvironment offers no reason why it could not again seek review of the standby trust requirement should the Department decide to eliminate it at some future time. The Board did not err in determining that the standby trust issue was moot. *See id.* at 859 (explaining that there is no exception to mootness where the petitioner has an available legal mechanism to obtain a reviewable determination should the claim at issue recur in the future).

16

**D. Violation of Fiduciary Duty**

In its final argument, PennEnvironment maintains that the Department violated its fiduciary duties under the Pennsylvania Constitution and the Clean Streams Law by its purported failure to require adequate financial assurances from PPG. We agree that the Environmental Rights Amendment imposes a fiduciary obligation on the Department in its role of enforcing Pennsylvania's environmental laws and regulations. The Pennsylvania Supreme Court has explained:

> The third clause of [the Environmental Rights Amendment] establishes a public trust, pursuant to which the natural resources are the corpus of the trust, the Commonwealth[] is the trustee, and the people are the named beneficiaries. [] The terms "trust" and "trustee" carry their legal implications under Pennsylvania law at the time the amendment was adopted. . . . [T]he Commonwealth's role was plainly intended to be that of a "trustee," as opposed to "proprietor." . . . As a trustee, the Commonwealth must deal "with its citizens as a fiduciary, measuring its successes by the benefits it bestows upon all its citizens in their utilization of natural resources under law." [] Under Section 27, the Commonwealth may not act as a mere proprietor, pursuant to which it "deals at arms['] length with its citizens, measuring its gains by the balance sheet profits and appreciation it realizes from its resources operations."[]

*Pa. Env't Def. Found.*, 161 A.3d at 931-32 (internal footnote and citations omitted). However, as we have concluded that the Board did not err in determining that the Department properly calculated the adequacy of the financial assurances provided by PPG to fund Costs at the Site in perpetuity, we must likewise conclude that the Board did not err in finding no violation of the Department's fiduciary duty to the public.

17

## IV. Conclusion

This Court is sensitive to the critical importance of safeguarding Pennsylvania's environment and natural resources, as embodied in the Environmental Rights Amendment. Nonetheless, we are constrained to conclude that the Board did not err in upholding the Department's approval of the financial assurances provided by PPG pursuant to the Amended COA. The Department performed a careful financial analysis, and the Board, after a hearing and a thorough examination of the evidence, upheld the Department's action. Discerning no error of law or unsupported factual findings and no constitutional violation, we must affirm the Board's order.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

PennEnvironment and Sierra Club, :
                      Petitioners :
                            :
                            :
            v. :
                            :
Department of Environmental :
Protection and PPG Industries, :
Inc. (Environmental Hearing Board), : No. 566 C.D. 2024
                 Respondents :

# **O R D E R**

AND NOW, this 11th day of March, 2025, the order of the Commonwealth of Pennsylvania, Environmental Hearing Board, dated April 9, 2024, is AFFIRMED.

_____
CHRISTINE FIZZANO CANNON, Judge